OPINION
{¶ 1} Appellant, Jerry Brazzon, appeals his conviction of two counts of rape in violation of R.C. 2907.02(A)(1)(b)(2), one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), and two counts of disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1) and (D), by jury trial in the Trumbull County Court of Common Pleas. Appellant also challenges his classification as a sexual predator under R.C. 2950.09. Appellant was sentenced to consecutive life terms of incarceration for the counts of rape and one year each for the other counts. We affirm appellant's convictions for the reasons stated below.
 {¶ 2} Appellant was formerly married to Bobbie Joe Clark, f.n.a. Brazzon ("Ms. Clark"). In the course of their marriage, Ms. Clark bore appellant two daughters, A. (age seven at the time of trial) and B. (age five at the time of trial). Prior to June 1999, appellant, Ms. Clark, and their children lived at 630½ Fenton Street in Niles, Ohio. Thereafter, they moved to 113 Fulton Street, also in Niles. By the end of 1999, appellant and Ms. Clark had separated and were living apart.
 {¶ 3} In December 1999, Ms. Clark received information from a friend that led her to suspect that appellant had acted in a sexually inappropriate way with their children. When questioned by her mother, A., then age six, told Ms. Clark that appellant had shown A. pornographic movies, that appellant had made her "put her mouth on him," and that appellant had come. Appellant attempted to contact Ms. Clark twice after A.'s revelations by calling her at her friend, Vickie Spina's house. On these occasions, appellant made self-incriminating statements to Ms. Clark and to Mrs. Spina.
 {¶ 4} Ms. Clark, thereafter, contacted the Niles city prosecutor and the Trumbull County Children Services Board ("CSB"). On January 6, 2000, A. was interviewed by Maureen Bushka, caseworker/investigator for CSB. Based on that interview, she made a referral to Tod Children's Hospital so that A. could be examined medically.
 {¶ 5} A. was again interviewed on February 3, 2000, by Janet Gorsuch, a nurse practitioner, and by Diane Russo, a social worker, at the Tri-County Child Advocacy Center ("CAC") operated through Tod Children's Hospital to obtain A.'s medical history. A. was then given a physical exam by Dr. Wilfred B. Dodgson. Although Dr. Dodgson was not present at the interview of A. by Nurse Gorsuch and Ms. Russo, he observed the history being taken on closed-circuit television.
 {¶ 6} At trial, A., Ms. Clark, Ms. Spina, and Ms. Buska gave testimony indicating that appellant had molested A. on several occasions. Nurse Gorsuch and Dr. Dodgson also testified for the prosecution over the objection of appellant's counsel.
 {¶ 7} On March 14, 2001, the jury returned a verdict finding appellant guilty on all counts. On April 17, 2001, the trial court determined appellant to be a sexual predator for the purposes of Ohio's registration laws for those convicted of a sexually oriented offense. This timely appeal followed.
 {¶ 8} Appellant assigns the following errors for review:
 {¶ 9} "[1.] The trial court abused its discretion by permitting appellee to introduce inadmissible hearsay testimony to the prejudice of the appellant.
 {¶ 10} "[2.] The appellant's convictions are against the manifest weight of the evidence.
 {¶ 11} "[3.] The appellant's classification as a `sexual predator' is not supported by sufficient evidence."
 {¶ 12} In his first assignment of error, appellant argues that the trial testimony of Ms. Bushka, Nurse Gorsuch, and Dr. Dodgson constituted inadmissible hearsay and that it was reversible error for the court to allow such testimony. At trial, however, counsel for appellant only raised objections to the testimony of Nurse Gorsuch and Dr. Dodgson. Therefore, we will only consider appellant's assignment of error as it pertains to the testimony of Nurse Gorsuch and Dr. Dodgson and will consider Ms. Bushka's testimony separately under the plain error standard. Crim.R. 52(B); State v. Seitzinger (Aug. 28, 1998), 11 Dist. No. 97-P-0085, 1998 Ohio App. LEXIS 3985, at *8 ("in the absence of an objection, a reviewing court will not consider an alleged error unless it rises to the level of plain error").
 {¶ 13} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 43 (citation omitted). Our inquiry is limited to determining whether the trial court has acted unreasonably, arbitrarily, or unconscionably in resolving the evidentiary issues of which appellant complains. Id (citation omitted).
 {¶ 14} At trial, Nurse Gorsuch testified, based on her February 3, 2000 interview with A., that appellant had molested A. Specifically, Nurse Gorsuch testified that appellant had touched A.'s vaginal area with his hand, penis and mouth; that he had sodomized her and had made her perform fellatio on him; that he had ejaculated; and that he had threatened to hurt A. if she refused to perform fellatio.
 {¶ 15} Dr. Dodgson, who conducted a physical exam of A., testified that there was scar tissue on A.'s vagina and that there was a tear in the child's anus. Although Dr. Dodgson acknowledged that, standing alone, this physical evidence was inconclusive of sexual abuse, when considered in light of the history that A. had provided Nurse Gorsuch, it was Dr. Dodgson's opinion that A. had definitely been sexually abused.
 {¶ 16} Dr. Dodgson further testified that A. had identified appellant as her abuser and had described the abuse in the same manner that Nurse Gorsuch had testified.
 {¶ 17} Nurse Gorsuch's and Dr. Dodgson's testimony was admitted at trial under the medical diagnosis exception to the hearsay rule. Evid.R. 803(4). Defense counsel argues that this exception does not apply because A.'s statements to Nurse Gorsuch and Dr. Dodgson were not made for the purpose of diagnosis or treatment, but rather for the purpose of preparing the prosecution's case against appellant.
 {¶ 18} Evidence Rule 803(4) excludes the following statements from the hearsay rule regardless of whether the declarant is available to testify:
 {¶ 19} "(4) Statements for purposes of medical diagnosis ortreatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment."
 {¶ 20} This court has held that for the medical diagnosis exception to apply it is not necessary that the statements be made directly to a physician. State v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023, 1998 Ohio App. LEXIS 1451, at *36. A statement may fit within the scope of the exception if it is directed to other physical and mental health professionals, nurses, psychiatrists, psychologists, therapists, as well as to social workers. In re Corry M. (1999), 134 Ohio App.3d 274,281.
 {¶ 21} The application of this rule to investigations of alleged child abuse has been discussed by the Ohio Supreme Court in State v.Dever, 64 Ohio St.3d 401, 1992-Ohio-41. The underlying rationale of the medical diagnosis exception is "the `selfish-interest rationale' or the belief that a person was motivated to tell the truth when seeking medical diagnosis or treatment because the person's well being might depend on expressing truthful information to the medical professional." In re CorryM., supra, at 281 (citation omitted). In Dever, the Supreme Court relaxed the motivational requirement of the hearsay exception as applied to children. The court recognized that although "a young child would probably not personally seek [medical] treatment, but would generally be directed to treatment by an adult, * * * the child's statements relating to medical diagnosis or treatment are [not] always untrustworthy for that reason alone." Dever, supra, at 409-410. While "the initial desire to seek treatment may be absent" in a child declarant, that "motivation certainly can arise once the child has been taken to the doctor." Id. at 410.
 {¶ 22} Under Dever, the "cornerstone of admissibility under Evid.R. 803(4)" remains "whether the statements are reasonably pertinent to diagnosis or treatment." State v. Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 Ohio App. LEXIS 583, at *22 (citation omitted); cf.Dever, supra, at 414 ("statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis or treatment, are admissible pursuant to Evid.R. 803(4)"). "In making this determination, a trial court must consider the circumstances surrounding the child's out-of-court statements to determine if it was made to a medical professional for the purposes of diagnosis or treatment." In re Corry M., supra, at 282, citing Dever, supra, at 410. If the trial court finds that the child's statements were made for the purpose of diagnosis or treatment, the evidence should be admitted." Jett, supra, at *35. "If, however, the trial court does not find sufficient factors indicating that the child's statements were made for the purpose of medical diagnosis or treatment, the statements must be excluded as not falling within the ambit of Evid.R. 803(4)." Id (citation omitted).
 {¶ 23} In the present case, there is scant evidence in the record as to whether A.'s statements to Nurse Gorsuch and Dr. Dodgson were made for the purpose of medical diagnosis or treatment. A.'s mother testified that, prior to A.'s evaluation at Tod Children's Hospital, she had prepared A. by telling her "what is going to happen." What exactly this entailed is not evident from the record. There is no evidence that either Nurse Gorsuch or Dr. Dodgson explained to A. the purpose of their examination of A. or that they were there to render her assistance.
 {¶ 24} Finally, although A. herself testified at trial and although the trial court did voir dire A. to determine her competency to testify, the trial court failed to make any inquiry into the circumstances surrounding her statements to Nurse Gorsuch and Dr. Dodgson as required by Dever. Dever, supra, at 410 ("[t]he trial court should consider the circumstances surrounding the making of the hearsay statement"). Given these circumstances, the state failed to establish a basis on which to admit the hearsay testimony of Nurse Gorsuch and Dr. Dodgson.
 {¶ 25} When considering whether to admit statements under the medical diagnosis and treatment exception, the court must consider the circumstances surrounding the hearsay statements. As the Supreme Court inDever stated: "This inquiry will vary, depending on the facts of each case. For example, the trial court may consider whether the child's statement was in response to a suggestive or leading question (as was the case in Idaho v. Wright), and any other factor which would affect the reliability of the statements (such as the bitter custody battle in Statev. Boston)." Dever, supra, at 410.
 {¶ 26} In the present case, the trial court should have voir dired A. to determine whether, in her mind, the information she provided to Nurse Gorsuch and Dr. Dodgson related to medical diagnosis or treatment. The court should also have considered the purpose of the evaluation — to gather evidence for the prosecution — as one of the factors affecting the reliability of the statements. A doctor's awareness that the medical history that he is taking or is having taken may ultimately be used to support a subsequent prosecution does not preclude the use of that testimony at trial. It must be established, however, that the child's statements are reasonably pertinent to medical diagnosis or treatment and that the person to whom the statements are made, whether a doctor, nurse, or social worker, is actually providing medical diagnosis or treatment.
 {¶ 27} The dissenting[1] and concurring opinions suggest that the purpose of A.'s medical evaluation was solely investigation, as opposed to treatment; therefore, the trial court did not need to look to the other circumstances surrounding the A.'s statements before ruling on their admissibility. "[T]he avowed non-medical purpose of the interview should disqualify any statement as an exception to the hearsay rule pursuant to Evid.R. 803(4)." We disagree with that application of the law to the facts of this case.
 {¶ 28} Ohio Evid.R. 803(4) is identical to Federal Rule of Evidence 803(4). Staff Note. Prior to the adoption of Fed.R.Evid. 803(4), the general rule at common law, as well as in the federal courts, was that a physician consulted for the purpose of prescribing treatment could testify to the case history related by the patient, but that a physician consulted only for the purpose of examination or evaluation could not. See, e.g., Padgett v. Southern Ry. Co. (C.A. 6, 1968), 396 F.2d 303,308; State v. Yamada (Haw. 2002), 57 P.3d 467, 480-481; Garrett v.Commonwealth (Ky. 2001), 48 S.W.3d 6, 11; cf. People v. Roy (Ill.App. 1990), 558 N.E.2d 1208, 1216 ("[t]he reference to diagnosis or treatment evinces a legislative intent to apply this provision broadly and not to limit the testimony only to treating physicians"). With the adoption of the Federal Rules of Evidence in 1975, the distinction between a "treating" and an "examining" physician was eliminated. "Rule 803(4) `abolished the [common-law] distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only: the latter usually refers to a doctor who is consulted only in order to testify as a witness.'" Morgan v. Foretich (C.A. 4, 1988), 846 F.2d 941, 950, quoting United States v. Iron Shell (C.A. 8, 1980), 633 F.2d 77, 83, certiorari denied 450 U.S. 1001 (1981).
 {¶ 29} In Ohio, the medical diagnosis or treatment exception to the hearsay rule was adopted with the same intention of abolishing the distinction between medical evaluations for the purpose of treatment and evaluation for the purpose of investigation. The Staff Notes to the Ohio Rules of Evidence make this clear:
 {¶ 30} "[Evid.R. 803(4)], while similar to prior Ohio law, extends the common law doctrine to admit statements made to a physician without regard to the purpose of the examination or need for the patient's history. In Scott v. Campbell (1961), 115 OApp 208, 20 OO2d 298,184 N.E.2d 485, the court recognized the exception as it applies to statements made to a treating physician. However, in Pennsylvania Co. v.Files (1901), 65 OS 403, 62 NE 1047, the court set forth the earlier limitation that statements made to a physician in preparation for litigation were not admissible under this common law exception.
 {¶ 31} "* * *
 {¶ 32} "The rule avoids the necessity of making often artificialdistinctions between those medical examinations and diagnoses made forpurposes of treatment and those made for purposes of trial in cases whereboth objectives are involved." (Emphasis added).
 {¶ 33} In the present case, the partial investigatory nature of A.'s evaluation does not automatically preclude the admission of A.'s statements under Evid.R. 803(4).
 {¶ 34} The evidence demonstrates that, taken together in the context of the overall events in the record, Dr. Dodgson's and Nurse Gorsuch's evaluation of A. had the dual purpose of determining A.'s medical condition for treatment and in anticipation for trial. A.'s evaluation was not a "ruse" conducted by detectives disguised as medical professionals. Nor was Nurse Gorsuch's interview of A., which Dr. Dodgson watched over closed-circuit television, the functional equivalent of the "interrogation chamber."[2] Dr. Dodgson and Nurse Gorsuch are medical professionals trained to evaluate cases of alleged sexual abuse. While Dr. Dodgson testified that he was not treating A. and that his only purpose in taking A.'s history was "to substantiate or bolster the case of the prosecutor," Nurse Gorsuch testified that "my particular role in this is to evaluate [the children] medically and treat them." Nurse Gorsuch further testified that interviewing A. is part of taking the medical history: "We need to know what kind of risk the child has for sexually transmitted infection or injury, and then we need to treat children. A. is small, but there are issues around pregnancy and so on, so we really need to get all of that information to do the right thing medically for the child."
 {¶ 35} Given the totality of the testimony of Dr. Dodgson and Nurse Gorsuch regarding the purpose of A.'s evaluation, it is impossible to conclude that their testimony could not possibly have been admissible under Evid.R. 803(4).
 {¶ 36} Moreover, even if the trial court erred in admitting the hearsay testimony of Nurse Gorsuch and Dr. Dodgson, such error was harmless in this case. A. herself testified at trial that appellant had touched her vagina and private parts "many times" both at the house on Fenton Street and at the house on Fulton Street, that appellant had shown her "bad movies" at both houses, that appellant had made her "suck his dick" as she had seen in the movies at both houses, that appellant would come, and that appellant told her that if she told anyone, he would kill her.
 {¶ 37} Ms. Clark testified that appellant would bring porno movies into their house, that A. told her that appellant had molested her, and that appellant had admitted to her that he had woken up from sleep to find A. performing fellatio on him, but that he had not forced her to do that. Ms. Clark also testified that in an alternative account of what had happened between appellant and A., appellant admitted to masturbating while the child slept nearby and that, as the child woke up, he came on the child's leg.
 {¶ 38} Mrs. Spina testified that appellant had admitted to her that he had "acted sexually inappropriate" with A.
 {¶ 39} Essential to our holding that appellant was not prejudiced by the admission of the hearsay testimony of Nurse Gorsuch and Dr. Dodgson is the direct testimony of the victim, the corroboration of that testimony by physical evidence, and appellant's incriminating admission. A.'s direct testimony was duplicative of the hearsay portions of Nurse Gorsuch and Dr. Dodgson. More importantly, A.'s own direct testimony gave appellant the opportunity to cross-examine A. regarding her testimony.State v. Boston (1989), 46 Ohio St.3d 108, 125 (holding that even where a child's out-of-court statements are admissible under Evid.R. 803(4), the issue of whether the introduction of such statements violates a defendant's right of confrontation under the Sixth Amendment still remains).
 {¶ 40} Moreover, Dr. Dodgson's testimony regarding the physical evidence of abuse, i.e., the labial adhesions and anal fissure, that A. displayed was not hearsay and was admissible. Coupled with A.'s own testimony, a sufficient foundation existed for Dr. Dodgson to opine that A. had in fact been abused. Therefore, we hold that appellant was not prejudiced by the erroneous admission of Nurse Gorsuch and Dr. Dodgson's hearsay testimony. See State v. Demetris, 11th Dist. No. 2001-T-0025,2002-Ohio-3711, at ¶ 68 (finding that defendant was not denied a fair trial by the admission of hearsay statements under Evid.R. 803(4) in a child sexual abuse case where the child victim testified to the abuse and physical evidence supported her allegations).
 {¶ 41} We now consider whether the testimony of Ms. Bushka, the social worker who conducted the initial interview with A. for CBS, constituted plain error. "To constitute plain error, it must be evident in the record that the error occurred; and, but for the error, the outcome of the trial would have been otherwise." Seitzinger, supra, at *9 (citations omitted). "Moreover, `notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id. quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 42} Here we determine that no plain error occurred. Ms. Bushka testified, based on her investigation of the matter, that appellant had molested A. at both Niles residences by touching her vagina and forcing her, by threats, to engage in fellatio and that appellant had shown A. pornographic movies. As demonstrated when considering the testimony of Nurse Gorsuch and Dr. Dodgson, this testimony is cumulative of testimony given by A. herself and corroborated by the testimony of Ms. Clark, Mrs. Spina, and the physical evidence.
 {¶ 43} Moreover, we find that Ms. Bushka's testimony was not inherently inadmissible. As shown above, statements made to social workers regarding sexual abuse are admissible under the medical diagnosis hearsay exception if a proper foundation is laid. In the present case, they would have been admissible, even if properly objected to, provided the state had first laid the proper foundation for their admission. Therefore, we hold that the testimony given by Ms. Bushka does not rise to the level of plain error. See Ashford, supra, at *25 (the trial court did not commit plain error in admitting hearsay testimony regarding sexual abuse where the child's statements could have been made for the purpose of medical diagnosis or treatment).
 {¶ 44} In his second assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. When a court reviews a verdict to determine whether it is against the manifest weight of the evidence, it "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 45} Appellant argues that Ms. Clark was motivated to bring these charges against appellant by a desire to obtain a simple divorce from appellant and full custody of A. and B. Appellant further argues that Mrs. Spina's testimony is suspect because she and Ms. Clark are best friends and that appellant's admission to Mrs. Spina that he had acted in a sexually inappropriate way did not mention any specific sexual acts. Appellant finally argues that A.'s testimony seemed mechanical and that A.'s memory of facts was selectively prejudicial to appellant.
 {¶ 46} None of appellant's arguments are substantiated with evidence adduced at trial. In no instance do they preclude a jury from accepting the testimony of Ms. Clark, Mrs. Spina, and A., as given. Accordingly, it was not against the manifest weight of the evidence to find appellant guilty of the charges brought against him, i.e., two counts of rape, one count of gross sexual imposition, and two counts of disseminating matter harmful to juveniles. Appellant's second assignment of error is without merit.
 {¶ 47} In his third assignment of error, appellant contends that the trial court's classification of appellant as a "sexual predator" is not supported by sufficient evidence. Specifically, appellant argues that the court did not consider all the factors required by R.C. 2925.09(B) because there was no evidence of all the factors before the court.
 {¶ 48} In contrast to considering whether a conviction was against the manifest weight of the evidence, "[w]hether the evidence is legally sufficient to sustain a verdict is a question of law." Thompkins, supra, at 386. "[S]ufficiency is a test of adequacy" of the evidence, focusing on the qualitative character of the evidence rather than its persuasiveness. Id.
 {¶ 49} R.C. 2950.01(E) defines a sexual predator as "a person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." The trial court must determine, by clear and convincing evidence, that the offender has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.09(C)(2)(b).
 {¶ 50} In making this determination, the trial court must consider all relevant factors, including, but not limited to, all of the following: (a) the offender's age; (b) prior criminal record; (c) the age of the victim of the sexually oriented offense; (d) whether the sexually oriented offense involved multiple victims; (e) whether the offender used drugs or alcohol to impair the victim or prevent the victim from resisting; (f) if the offender previously had been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense, and if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sex offenders; (g) any mental illness or mental disability of the offender; (h) the nature of the offender's sexual conduct, contact, or interaction in a sexual context with the victim and whether that conduct, contact, or interaction was part of a demonstrated pattern of abuse; (i) whether the offender, during the commission of the offense, displayed cruelty or threatened cruelty; and (j) any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(3)(a) through (j).
 {¶ 51} A trial court is not required to find that a majority of these factors are present before it classifies an offender as a sexual predator, but need only find one or two of the statutory factors present "if the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a sexually oriented offense in the future." State v. Dukes, 11th Dist. No. 2001-L-127, 2002-Ohio-5155, at ¶ 12. Nor does the statute "require the court to list the criteria, but only to `consider all relevant factors, including' the criteria in R.C. 2950.09(B)(2) in making [its] findings." State v. Cook, 83 Ohio St.3d 404, 426, 1998-Ohio-291. The record should include the particular evidence relied upon by the trial court in deciding an offender is a sexual predator. State v. Eppinger,91 Ohio St.3d 158, 166, 2001-Ohio-247.
 {¶ 52} Although R.C. 2950.09 permits the state and the defendant to introduce expert testimony to help the court determine whether the defendant is a sexual predator, the statute "does not mandate that the parties must introduce expert testimony, and does not require the court to rely on any expert testimony given." State v. Naples, 11th Dist. No. 2000-T-0122, 2001-Ohio-8728, 2001 Ohio App. LEXIS 5639, at *5.
 {¶ 53} In the present case, the court clearly indicated that it considered all of the factors listed in R.C. 2950.09(B)(2) both in its judgment entry ("This Court has considered all the factors listed in ORC2950.09(B)(2)") and during the sexual predator hearing itself ("I have reviewed the factors in Section 2950.09, and Section (B)(2)"). The court found the following factors to support its classification of the appellant as a sexual predator:
 {¶ 54} "1. This Defendant has two (2) convictions for sex offenses.
 {¶ 55} "2. There were three (3) females [sic] victim age 10 and younger.
 {¶ 56} "3. There was a demonstrated pattern of abuse involving the three victims.
 {¶ 57} "4. In the present case, there clearly was no doubt that a significant threat was made to the victim."
 {¶ 58} In reaching its conclusion, the trial court relied upon the record of the case before it, the information contained in the pre-sentence investigation, and a certified copy of the appellant's plea to a bill of information in another case in which the defendant pled guilty to two counts of gross sexual imposition involving minors. The court also noted that appellant refused to submit to a sexual predator evaluation ordered by the court and that appellant declined to have his own psychologist or psychiatrist testify for tactical reasons.
 {¶ 59} We hold that the trial court fully complied with the requirements of the statute in classifying appellant as a sexual predator and that this determination was supported by legally sufficient evidence. Appellant does not specifically identify any single factor listed in R.C. 2950.09(B)(2) that the trial court was unable to consider given the evidence before it. Appellant challenges the court's reliance upon a letter proffered by the state from Forensic Psychiatric Center of Northeast Ohio stating that appellant refused to be evaluated. In the present case, such reliance was not even necessary since appellant testified at the sexual predator hearing that he refused to be evaluated.
 {¶ 60} Appellant also argues that the court should not have considered his plea to other sexually related offenses on the grounds that these offenses occurred after the incidents involving A. We note that the record reflects that it was the court's understanding that the incidents underlying both of appellant's convictions occurred during a contemporaneous time period. Appellant has submitted no evidence to substantiate his chronology of the underlying offenses. Appellant's conviction of the other offenses occurred prior to his convictions in the present case. Nor has appellant cited any case law that would preclude the trial court from considering the other convictions. R.C. 2950.09 gives the trial court broad discretion to consider "all relevant factors" beyond those specifically enumerated in the statute. Appellant's other convictions certainly qualify as "relevant factors." Appellant's third assignment of error is without merit.
 {¶ 61} The judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
[1] The dissent suggests that a trial court apply a different, more enhanced, evidentiary standard when a hearsay objection is asserted by a defendant's counsel. Such a distinction, however, is without merit. When the Rules of Evidence are not properly followed to the prejudice of a defendant, corrective action is required, regardless of whether there was an objection. The instant action is not such a case. The trial court's evidentiary rulings did not constitute reversible error because, as confirmed in the concurring opinion of my colleague, Judge Christley, there is abundant evidence (including victim testimony and corroborative physical evidence) to support the jury's verdict, separate from the challenged testimony.
[2] There is no pretty way to elicit testimony from a seven-year-old that her father has molested her. The procedure of having a nurse or social worker take a victim's history before the victim is examined by a medical doctor is a fairly standard procedure for investigating allegations of child sexual abuse. We fail to see what difference it makes as regards the veracity of the victim's account of the abuse whether the doctor watches the history being taken or merely reads a written report of that history at a later time. We agree that the better practice would be to record the victim while she provides the history, as is done in other counties.