OPINION
{¶ 1} Michael Root ("Root") appeals the November 22, 2002 judgment entry of the Ashtabula County Court of Common Pleas accepting the jury's guilty verdict. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} On September 20, 2001, the victim ("K."), a seven-year old girl, was riding her bicycle near Root's residence. Upon Root's arrival at his residence, K. proceeded with Root to his apartment. After a period of time, Debra Wing ("Wing"), Root's neighbor and owner of the apartment building in which Root resided, went to Root's apartment to check on K. Upon entering the apartment, Wing observed the darkness of the apartment and heard a shower running, but did not see K. Wing knocked on the bedroom door[1] and called K.'s name. After receiving no response, Wing exited Root's apartment.
 {¶ 3} After failing to locate K. anywhere else, Wing contacted Debra Spangler ("Spangler"), K.'s mother, and informed her that she could not find K. and that Wing had last seen K. enter Root's apartment. Spangler immediately went to Root's apartment. Finding the bedroom door locked, Spangler pounded on the bedroom door while yelling K.'s name. Just as Spangler was going to attempt to kick the door open, K. opened the door.
 {¶ 4} K. exited the room while adjusting her clothing. Spangler then noticed Root crouching and hiding in the dark bedroom. After removing K. from the apartment, Spangler contacted 911. In response to Spangler's general inquiry into the incident, K. immediately responded that Root had taken her into the bedroom and removed both of their clothing. K. then stated that Root laid her on the bed, kissed her, and squirted a liquid in her mouth. K. then told Spangler that Root sprayed the same liquid on her vaginal area and licked it off. K. further said that Root then tried to put his thing in her, but that it would not go. K. finally told Spangler that Root then retrieved a pink object, inserted batteries into it, and attempted to put it in her.
 {¶ 5} The first officer on the scene directed Spangler to take K. to the hospital. While at the hospital, K. talked to Sergeant Anthony Emery ("Sgt. Emery") and told him the same account of the events as she relayed to Spangler. K. also described the sex objects Root used on her and the location of these objects. Sgt. Emery notified Detective Terry Moisio ("Det. Moisio") of this information. In searching Root's apartment, Det. Moisio found the sex objects in the exact locations as described by K. In speaking with Det. Moisio at the time of the search, Root informed Det. Moisio that K. was never in his apartment that day and that his bedroom door was never locked. The sex objects were later seized from Root's apartment. Subsequent testing of hairs retrieved from one of the sex objects revealed that the hair from the sex object was consistent with hair removed from K.'s head.
 {¶ 6} During the physical rape examination at the hospital, K. again relayed the same account of the events to the medical staff. Also during this examination, Dr. Jeffrey Stover ("Dr. Stover") removed two strands of pubic hair from K.'s vaginal area. A mitochondrial DNA test on the pubic hairs later indicated that Root had the same DNA makeup of the pubic hairs.
 {¶ 7} Root was subsequently charged with three counts of rape, with specification, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, and two counts of kidnapping in violation of R.C. 2905.01(A)(2), felonies of the first degree. Root pleaded not guilty to these charges. On November 19, 2002, the state filed a motion in limine to permit hearsay testimony of K.'s statements to Spangler and to the medical staff pursuant to Evid.R. 803(2) and Evid.R. 803(4), respectively. The trial court deferred ruling on the motion until a proper foundation was laid at trial. The trial court proceeded to conduct a three-day trial, commencing on November 19, 2002. At the close of the state's evidence, the trial court directed a verdict of not guilty on one count of kidnapping. The jury returned a verdict of guilty on all three counts of rape and not guilty on the kidnapping charge on November 22, 2002.
 {¶ 8} The trial court held a joint sentencing and sexual predator hearing on February 28, 2003. Root was sentenced to nine years for each of the first two counts of rape, to be served concurrently, and to seven years on the third count of rape, to run consecutively to the first two counts, for a total sentence of 16 years. The trial court also found that Root was a sexually-oriented offender.
 {¶ 9} Root timely appealed and raises the following assignments of error:
 {¶ 10} "[1.] The Trial Court erred in allowing hearsay testimony of the alleged victim, [K.]
 {¶ 11} "[2.] The Trial Court erred by allowing Sergeant Anthony Emery of the Conneaut Department [to] testify as to his opinions of the truthfulness of [K.'s] Statements.
 {¶ 12} "[3.] Appellant's Trial Counsel rendered ineffective assistance of Counsel.
 {¶ 13} "[4.] The Trial Court erred in denying Appellant's Motion for Acquittal upon the Counts of rape pursuant to Criminal Rule 29.
 {¶ 14} "[5.] The Conviction is against the manifest weight of the evidence."
 {¶ 15} In his first assignment of error, Root claims that the child abuse hearsay exception contained in Evid.R. 807 is the only hearsay exception applicable in child abuse cases. Thus, Root argues that, since the state failed to demonstrate that K. was unavailable and since the state did not put forth a good faith effort to produce her, the introduction of her hearsay statements, as testified to by her mother, by Sgt. Emery, and by Dr. Stover, was improper. Root further argues that the admission of these statements violated his constitutional right to confront the witness.
 {¶ 16} Root states that he failed to object to the admission of the hearsay statements at trial. He did, however, object to the state's motion in limine regarding the use of the hearsay statements prior to trial and at the conclusion of the evidence. Although arguably Root did not properly object to the testimony, see State v. Chaiffetz, 3rd Dist. No. 9-98-20, 1999 Ohio App. LEXIS 2673, at *39, 1999-Ohio-801 (citations omitted); State v.Stewart (Dec. 8, 1997), 4th Dist. No. 96CA18, 1997 Ohio App. LEXIS 5625, at *12 (citations omitted), the record indicates that the trial court considered Root's objection in ruling that the statements were admissible hearsay. Thus, in the interests of justice, we will proceed as if Root preserved his objection for appeal.
 {¶ 17} Evidentiary rulings are within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v. Long (1978), 53 Ohio St.2d 91, 98. An abuse of discretion consists of more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169 (citation omitted). Reversal, under an abuse of discretion standard, is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984),15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 18} Evid.R. 807 "recognizes a hearsay exception for the statements of children in abuse situations." Evid.R. 807, Staff Notes. "This exception[, however,] is in addition to the exceptions enumerated in Evid.R. 803 and 804." Id. Thus, Root's claim that Evid.R. 807 is the exclusive hearsay exception in child abuse cases is misplaced. Since the record reveals that the trial court admitted the hearsay statements under Evid.R. 803(2) and Evid.R. 803(4), rather than Evid.R. 807, we will now examine whether the trial court abused its discretion in admitting the statements under these two hearsay exceptions.
 {¶ 19} Evid.R. 803(2) provides a hearsay exception for statements "relating to a startling event * * * made while the declarant was under the stress of excitement caused by the event," even if the "declarant is available as a witness." "In determining whether a statement qualifies as an excited utterance, the court should consider `(1) the lapse of time between the event and the statement, (2) the mental and physical condition of the declarant, (3) the nature of the statement, and (4) the influence of intervening circumstances.'" State v.Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 Ohio App. LEXIS 583, at *13-*14, quoting State v. Humphries (1992),79 Ohio App.3d 589, 598. "The controlling factor is whether the declaration was made under such circumstance as would reasonably show that it resulted from impulse rather than reason and reflection." Humphries, 79 Ohio App.3d at 598.
 {¶ 20} "[I]n cases involving hearsay statements of children in the prosecution of the children's alleged abusers, if the hearsay statement at issue falls within a firmly rooted exception, * * * its admission does not violate the defendant's right of confrontation." State v. Dever, 64 Ohio St.3d 401,418, 1992-Ohio-41 (citations omitted). "In such a case, the prosecution is not required to demonstrate the unavailability of the declarant." Id. (citation omitted).
 {¶ 21} In this case, K.'s statement to Spangler clearly falls within Evid.R. 803(2). The statements were made within minutes of K. exiting Root's apartment. Spangler described K.'s condition as "panic-stricken" and "terrified." K.'s statement was detailed and was provided after a general question as to what happened, rather than the result of provocation or prodding. Given these facts, we find that the trial court did not abuse its discretion in admitting K.'s hearsay statements through Spangler. See State v.Boston (1989), 46 Ohio St.3d 108, 118 (child's statement to her mother, which "occurred at the earliest opportunity," was properly admitted under the excited utterance exception).
 {¶ 22} Regarding K.'s statement to Sgt. Emery, this statement likewise falls within the excited utterance exception to hearsay. K.'s statement was made to Sgt. Emery within 45 minutes of K. exiting Root's apartment. Moreover, K.'s statement was made without any prodding or provocation. Although the statement to Sgt. Emery potentially could have been influenced by some intervening cause, the statement was substantially the same as the statement to Spangler and there was no indication of any such influence. Thus, we find that the trial court did not abuse its discretion in admitting these statements under Evid.R. 803(2). See State v. Taylor (1993), 66 Ohio St.3d 295, 304 ("we have upheld the admission of [statements of a child regarding sexual assault] even when made after a substantial lapse of time, but in those cases we have done so because we recognize that children are likely to remain in a state of nervous excitement longer than would an adult"); Ashford, 2001 Ohio App. LEXIS 583, at * 17-*18 (the trial court did not abuse its discretion in admitting the child's statements that occurred one and two days after the event).
 {¶ 23} Moreover, since, as discussed above, K.'s statements to Spangler and Sgt. Emery fall within the excited utterance exception, a firmly rooted hearsay exception, see Porter v.Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus;State v. Combs (Sept. 25, 1998), 11th Dist. No. 97-L-049, 1998 Ohio App. LEXIS 4525, at *18, the admission of these statements do "not violate [Root's] right of confrontation." Dever,64 Ohio St.3d at 419.
 {¶ 24} Evid.R. 803(4) provides for the admissibility of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, * * * or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment," even if the declarant is available. "The cornerstone of admissibility under Evid.R. 803(4) is whether the statements are reasonably pertinent to diagnosis or treatment." State v. Miller (1988),43 Ohio App.3d 44, 46 (citation omitted). "If the trial court finds in voir dire[, however,] that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of diagnosis or treatment." Dever, 64 Ohio St.3d at 410.
 {¶ 25} In this case, Dr. Stover testified regarding the statement K. gave as part of her medical history. Prior to trial, the trial court conducted a hearing, wherein the trial court found that K. was competent to testify and that her statements were "not coached" and were spontaneous.[2] Moreover, prior to testifying regarding the contents of K.'s statement, Dr. Stover testified about the importance, in treating the child-victim of a sexual assault, of receiving information regarding the assault, including the identity of the assailant. These statements "assist the doctor in treating any actual injuries the child may have, in preventing future abuse of the child, and in assessing the emotional and psychological impact of the abuse on the child." Id. at 413, citing United States v.Renville (C.A. 8, 1985), 779 F.2d 430, at 436-438. Thus, we find that the trial court did not abuse its discretion in finding that K.'s statement taken as part of her medical history was made for the purposes of diagnosis or treatment and that, as such, was admissible under Evid.R. 803(4). See Ashford, 2001 Ohio App. LEXIS 583, at * 25 ("Because the child's statements could have been made for purposes of medical diagnosis or treatment, the trial court did not * * * error in finding the testimony * * * admissible pursuant to Evid.R. 803(4)."); see, also, State v.Brazzon, 11th Dist. No. 2001-T-0050, 2003-Ohio-6088, at ¶¶ 41-43.
 {¶ 26} Since we found above that the statement K. gave as part of her medical history falls within the medical exception to hearsay, a firmly rooted hearsay exception, the admission of this statement does not violate Root's right to confrontation.Dever, 64 Ohio St.3d at 404-405.
 {¶ 27} Root's first assignment of error is without merit.
 {¶ 28} In his second assignment of error, Root argues that Sgt. Emery's testimony regarding his opinion as to the veracity of K.'s statement was improper. Root acknowledges his failure to object to this testimony at trial, but he claims that the trial court committed plain error in admitting this testimony. Unlike the statements admitted under Root's first assignment of error, Sgt. Emery's testimony regarding the veracity of K.'s statement was not the subject of the motion in limine. Thus, Root wholly failed to object to the veracity statement, requiring an examination of this assignment of error under the plain error standard.
 {¶ 29} "[A]n appellate court will not consider any error which * * * [the complaining party] could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." Statev. Glaros (1960), 170 Ohio St. 471, paragraph one of the syllabus. Such errors are waived and cannot be raised upon appeal. Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, 43.
 {¶ 30} In the absence of an objection, however, the trial court may rule evidence inadmissible to avoid plain error. Crim.R. 52(B). Plain error is to be invoked "only under exceptional circumstances to prevent a manifest miscarriage of justice." State v. Phillips, 74 Ohio St.3d 72, 83,1995-Ohio-171, citing Long, 53 Ohio St.2d 91. In other words, there is no plain error unless the outcome of the trial would have been different in the absence of the error. State v.Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 31} "An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."Boston, 46 Ohio St.3d 108, at syllabus. Since "jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their perceived experiences with other cases," an officer may not testify regarding the veracity of a witness' statement. State v. Potter, 8th Dist. No. 81037, 2003-Ohio-1338, at ¶¶ 38-39 (citation omitted).
 {¶ 32} In this case, Sgt. Emery testified that he "thought [K.] * * * was being truthful." While this testimony was improper and should have been excluded, there was sufficient evidence to support the conviction, as discussed below. Therefore, we cannot say that the admission of such evidence created a manifest miscarriage of justice. The trial court did not commit plain error in admitting the testimony because the outcome of the trial would not have been different in the absence of the error. Statev. Jones (1996), 114 Ohio App.3d 306, 319. Moreover, based upon the overwhelming testimony and physical evidence, as discussed below, any improper admission of this testimony was harmless. SeePotter, 2003-Ohio-1338, at ¶ 39.
 {¶ 33} Root's second assignment of error is without merit.
 {¶ 34} Root claims in his third assignment of error that he was provided ineffective assistance of trial counsel for counsel's failure to object to the hearsay statements discussed above, as well as Sgt. Emery's veracity statement.
 {¶ 35} To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 36} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. Thus, a defendant "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id., quoting Michel v. Louisiana (1955),350 U.S. 91, 101. "Debatable trial tactics generally do not constitute a deprivation of effective counsel." Phillips,74 Ohio St.3d at 85.
 {¶ 37} "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Seiber (1990), 56 Ohio St.3d 4, 11, citing Strickland, 466 U.S. at 687 ("counsel's errors [must be] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable"). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691 (citation omitted).
 {¶ 38} In this case, since we already found that the trial court did not abuse its discretion in admitting the hearsay statements, we cannot find that Root's counsel was ineffective for failing to object to this testimony. Moreover, although counsel arguably did not properly object to the hearsay statements, as discussed above, the record reveals that the trial court considered the merits of counsel's objection in ruling on the motion in limine. Thus, "[b]ecause `objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' * * * [and because, as such,] competent counsel may reasonably hesitate to object in the jury's presence," State v. Campbell, 69 Ohio St.3d 38, 53,1994-Ohio-492 (citation omitted), we do not find that Root's counsel was ineffective for failing to object to the hearsay statements during trial.
 {¶ 39} In regards to counsel's failure to object to the veracity testimony, although trial counsel should have objected to such testimony, the failure to do so had no effect on the judgment, as discussed under the second assignment of error. Thus, since Root is unable to prove he was prejudiced by this purported ineffective assistance of counsel, he is not entitled to a reversal on this claim. See State v. Demetris, 11th Dist. No. 2001-T-0025, 2002-Ohio-3711, at ¶ 68 (in light of the admissible testimony and the physical evidence, the defendant was not denied a fair trial by his counsel's failure to object to inadmissible testimony).
 {¶ 40} Root's third assignment of error is without merit.
 {¶ 41} In his fourth assignment of error, Root argues that, in light of the trial court's admission of inadmissible hearsay, his motion for acquittal was improperly denied.
 {¶ 42} Pursuant to Crim.R. 29, a motion for judgment of acquittal should be granted "if the evidence is insufficient to sustain a conviction." In other words, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. The same standard of review that is applied to a challenge to the sufficiency of evidence is also applied to a denial of a motion for acquittal. State v. Ready (2001),143 Ohio App.3d 748, 759. Thus, a trial court's denial of a motion for acquittal must be sustained if, "after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., citing State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 43} In this case, we found above that the trial court did not abuse its discretion in admitting the hearsay statements. Therefore, construing the evidence in favor of the prosecution, including the mitochondrial DNA match between the pubic hairs discovered in K.'s vaginal area and Root's DNA, the consistency between the hair removed from the sex object and K.'s own hair, the testimony of Wing regarding her attempt to gain access to Root's apartment, and the testimony from Spangler, Sgt. Emery, and Dr. Stover regarding K.'s account of the incident, we find that the evidence was sufficient so that a rational trier of fact could have found the essential elements beyond a reasonable doubt. The trial court did not err in overruling Root's motion for acquittal.
 {¶ 44} Root's fourth assignment of error is without merit.
 {¶ 45} In his final assignment of error, Root asserts that, absent the inadmissible hearsay testimony, the jury clearly lost its way in its finding of guilt.
 {¶ 46} In reviewing a manifest weight argument, we must conduct an "examination of the entire record and [determine] whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533. "The question is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonably doubt." Id. at 193-194 (emphasis sic), citing State v. Eley (1978), 56 Ohio St.2d 169, syllabus. In other words, we must "determine whether the jury `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Statev. Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-132 (citations omitted).
{¶ 47} In this case, a jury reasonably could have concludedthat all the elements of rape had been proven beyond a reasonabledoubt. The jury heard testimony from Spangler, Sgt. Emery, andDr. Stover regarding K.'s account of the incident, all of whichwere similar in content, and which we already determined theadmission of such testimony was not an abuse of discretion, asdiscussed above. The jury also heard testimony from Wingregarding her attempts to gain access to Root's apartment. Thestate proffered substantial physical evidence, i.e. the pubichairs discovered in K.'s vaginal area during the rapeexamination, which matched Root's DNA, and a hair retrieved fromthe sex object, which was consistent with hair from K.'s head. Insupport of this physical evidence, the state proffered testimonyfrom the forensic specialists regarding the testing performed onthe samples and the results. Although Root denied the accusationsduring his testimony, the weight to be given the evidence deduced at trial and the credibility of the witnesses are within the purview of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Thus, considering the above admissible testimony and physical evidence, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that Root's conviction must be reversed and a new trial ordered.
 {¶ 48} Root's fifth assignment of error is without merit.
 {¶ 49} For the foregoing reasons, we hold that Root's assignments of error are meritless. The decision of the Ashtabula County Court of Common Pleas is affirmed.
Judgment affirmed.
Ford, P.J., and Rice, J., concur.
[1] The source of the running shower was the bathroom shower that only was accessible from the bedroom.
[2] Root previously filed a motion for a pre-trial taint hearing and a motion for a competency hearing. Although the hearing was labeled a competency hearing, the judgment entry following the hearing indicates that the trial court considered whether K. was competent, as well as whether her statements were inappropriately influenced, as required by Dever.