OPINION
{¶ 1} Appellant, Michael A. Stalnaker, appeals from the judgments of the Lake County Court of Common Pleas, denying his motion to suppress; convicting him of rape, gross sexual imposition, and furnishing alcohol to minors; and sentencing him to an aggregate prison term of thirty-three years. For the reasons that follow, we affirm.
 {¶ 2} Appellant was indicted by the Lake County Grand Jury on the following counts: (1) five counts of rape, each a first degree felony in violation of R.C. 2907.02(A)(1)(b); (2) six counts of gross sexual imposition, each a third degree felony in violation of R.C. 2907.05(A)(4); (3) one count of furnishing alcohol to a minor, a first degree misdemeanor in violation of R.C. 4301.69(C)(1) and 4301.99(C); and (4) five counts of furnishing alcohol to a minor, in violation of R.C. 4301.69(A) and 4301.99(I). At his arraignment, appellant pleaded not guilty to the foregoing charges.
 {¶ 3} This matter proceeded to a jury trial. Prior to trial, appellant filed a motion to suppress evidence of a "controlled" phone call. After the twelve-year-old victim implicated appellant on the foregoing charges, the police requested that she initiate a "controlled" phone call with appellant, while the police taped the call. The victim agreed and called appellant. Transcripts of the phone call corroborated her claims of sexual encounters with appellant. Appellant argued that the "controlled" phone call violated R.C. 2933.52, as the victim had failed to consent to the call and was coerced into making the call. Following a suppression hearing, the court denied appellant's motion to suppress.
 {¶ 4} The following facts were revealed during trial. At the time the alleged sexual encounters occurred, appellant was forty years old and the victim was twelve years old. Appellant resided in Florida, but often traveled to Lake County, Ohio, to visit his family and children. The victim was friends with appellant's daughter. In mid-March 2003, the victim was visiting appellant's daughter. During the visit, the victim viewed appellant's instant messaging e-mail address on a computer.
 {¶ 5} When she returned home, the victim began to instant message appellant. Appellant and the victim continued to instant message each other on a daily basis from mid-March until late June 2003. Transcripts of the instant messages established that appellant and the victim engaged in graphic sexual discussions and had professed their love to each other. Also, the victim had e-mailed appellant a picture of her genitals.
 {¶ 6} In late June 2003, appellant began to contact the victim via phone. The victim testified that the phone calls again included sexual discussions and appellant professing his love for her. She further testified that phone contact with appellant was on almost a daily basis from late June 2003 until the beginning of September 2003. Cellular phone records established that appellant spent over 1000 hours speaking with the victim.
 {¶ 7} Appellant and the victim first met in early July 2003, at the Mentor Civic Center. Approximately a week and a half later, appellant arranged a "pool party" at a hotel in Willoughby, Ohio, for his children and their friends. The victim attended the pool party. She testified that appellant had reserved two rooms at the hotel. Appellant was staying in one room, while his children and their friends were staying in the other room. The victim stated that appellant provided her and the other children with alcohol from his room.
 {¶ 8} Following the pool party, appellant engaged in various sexual encounters with the victim. The victim testified that in early August 2003, she met appellant close to her house at around 1:00 a.m. Appellant drove the victim in his van to a nearby Lake County rest stop. At the rest stop, appellant gave the victim some beer. The victim stated that appellant was lying down with her in the back of the van. She testified that while they both had clothes on, he began to rub his genitals against her genitals. Appellant then attempted to place his hands down her pants, but the victim stopped him. The victim stated that appellant dropped her off near her house at approximately 4:00 a.m.
 {¶ 9} On or about August 20, 2003, the victim saw appellant's van at a pool parking lot. When she approached him, he invited her into his van. Appellant proceeded to French kiss the victim and rub her vagina with his hand over her bathing suit.
 {¶ 10} The victim testified that shortly after the August 20, 2003 sexual encounter, she met appellant near her house at approximately 1:00 a.m. Appellant drove the victim back to the rest stop and they drank Jim Beam Coolers and beer. The victim removed her clothes, and appellant digitally penetrated her vagina and performed cunnilingus on the victim. Appellant then removed his clothes and began to rub his penis against the victim's vagina. The victim testified that at one point she felt appellant's penis penetrate her vaginal cavity, but appellant did not ejaculate. Appellant was also fondling the victim's breasts. At some point, appellant and the victim put on their clothes and used the rest stop restroom. When they returned to the van, appellant again digitally penetrated the victim's vagina. Appellant then dropped the victim off near her house at approximately 4:00 a.m.
 {¶ 11} The victim stated that approximately a week later she met appellant near her house around 1:00 a.m. They drove to the rest stop and consumed beers. The victim removed her clothes and appellant digitally penetrated her vagina. Appellant and the victim then used the rest stop restroom and returned to the van where appellant digitally penetrated the victim's vagina and fondled her breasts. He returned the victim to her house at approximately 4:00 a.m.
 {¶ 12} Appellant and the victim engaged in their final sexual encounter on September 4, 2003. The victim testified that appellant picked her up near her house at around 12:30 a.m. She stated that he proceeded to drive his van to the rest stop. At the rest stop, appellant and the victim drank green-melon wine. Appellant again digitally penetrated the victim's vagina and fondled her breasts. Appellant and the victim removed their clothes and he began to rub his penis against her vagina. On this occasion, appellant asked the victim if she would engage in sexual intercourse with him. The victim told appellant he would have to wait because she planned to have sex with him on his birthday. Appellant returned the victim near her home at approximately 5:30 a.m.
 {¶ 13} That morning, the victim's mother discovered the victim attempting to sneak back into the house. The victim's mother questioned her as to her whereabouts. Ultimately, the victim's mother suspected sexual abuse. As a result, she notified the police and took the victim to a hospital. At the hospital, a rape kit was administered. The doctor performing the rape kit testified that two fingernail sized lesions were detected within the victim's vaginal cavity.
 {¶ 14} Later that afternoon, the victim informed the police that she and appellant had engaged in numerous sexual encounters. The police asked the victim to initiate a "controlled" phone call to appellant. The victim consented and called appellant. A transcript of the recorded phone call corroborated the victim's allegations with respect to the September 4, 2003 sexual encounter and the ongoing sexual relationship between appellant and the victim.
 {¶ 15} In particular, appellant apologized repeatedly for scratching the inside of the victim's vagina with his fingernails. He further stated that he did not like the green-melon wine consumed at the rest stop. Appellant and the victim also discussed their plan to have sexual intercourse on or near his birthday. Appellant stated that he had attempted to have sex with the victim previously, but she stopped him.
 {¶ 16} The victim provided additional testimony, on direct-examination, with respect to appellant's ongoing romantic relationship with a classmate. The victim testified that the relationship was contemporaneous with her sexual relationship with appellant. She also stated that appellant was involved in a romantic relationship with a second classmate before she met him. Appellant's defense counsel did not object to the foregoing testimony. Finally, the victim testified as to statements she made to a female friend and classmate in late August 2003, regarding her sexual relationship with appellant.
 {¶ 17} On cross-examination, appellant attempted to establish the victim's fabrication of the alleged sexual encounters. Specifically, appellant tried to demonstrate that the victim's allegations were a last ditch effort to keep appellant involved in her life and were also due to her jealousy of appellant's relationships with her classmates. Also, appellant attempted to show that the improper influences of the victim's mother, the police, and the child advocate resulted in the victim's allegations.
 {¶ 18} Introduced as evidence were appellant's cell phone record, and hotel/store receipts from outside Ohio, to demonstrate that on certain specific dates he was either not with the victim at the time of the alleged encounters or was not in Ohio. When presented with this evidence, the victim again stated that she could not remember the exact dates the sexual encounters occurred.
 {¶ 19} Appellant also opened the door to other bad acts by introducing evidence of his contemporaneous relationship with the victim's classmate. He attempted to use this evidence to demonstrate the victim had fabricated the alleged sexual encounters as she was jealous of appellant's relationship with the classmate and was attempting to get back at him.
 {¶ 20} The victim's female friend provided testimony during the trial. Over appellant's objection, the female friend testified that the victim had stated she believed she was pregnant with appellant's child. The female friend further testified that the victim asked her how to abort the baby. Also, appellant's ex-wife testified that appellant often smoked marijuana with his children's friends and allowed, under his supervision, young boys and girls to sleep together. Appellant's defense counsel did not object to this testimony.
 {¶ 21} Appellant's testimony denied that he had had a sexual relationship with the victim. His testimony attempted to show that he was either not with the victim or was not in Ohio at the time of the alleged sexual encounters. With respect to the "controlled" phone call, appellant stated that he was merely playing along with what the victim was saying and that he had not engaged in a sexual encounter with the victim on that evening. He also testified that he did not provide any of the minors with alcohol at the July 17, 2003 pool party.
 {¶ 22} Following trial, the jury returned a unanimous guilty verdict on all counts. The court entered judgment accordingly, convicting appellant on all counts. After holding a sentencing hearing, the court sentenced appellant to an aggregate prison term of thirty-three years.
 {¶ 23} From this judgment, appellant filed a timely notice of appeal and now sets forth the following seven assignments of error:
 {¶ 24} "[1.] The trial court committed reversible error when it failed to suppress the `controlled' call between Appellant and [the victim].
 {¶ 25} "[2.] Appellant was denied the effective assistance of counsel, and was denied a fair trial in violation of the Ohio and United States Constitutions through the absence of objection to the introduction of inflammatory, prejudicial and irrelevant `bad act' evidence which was not admissible under Evidence Rule 404(B).
 {¶ 26} "[3.] The trial court erred in denying Appellant's motion for a directed verdict of acquittal on that count of the indictment which alleged Appellant had provided alcohol to [the victim] at the pool party of July 17, 2003.
 {¶ 27} "[4.] The trial court committed reversible error when over Appellant's objection it permitted [the victim's female friend] to testify concerning hearsay statements allegedly made by [the victim].
 {¶ 28} "[5.] Appellant's sentence was imposed in violation of Appellant's constitutional rights under the Sixth andFourteenth Amendments to the United States Constitution.
 {¶ 29} "[6.] Each of the guilty verdicts herein were against the manifest weight of the evidence and, accordingly, in violation of Appellant's constitutional rights.
 {¶ 30} "[7.] Appellant's convictions were based insufficient evidence and, therefore, should be reversed."
 {¶ 31} Under his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress. Appellant maintains that the court erred in determining that the victim vicariously consented to the "controlled" phone call via her mother. He further argues that the "controlled" call violated R.C. 2933.52 due to a lack of consent.
 {¶ 32} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288.
 {¶ 33} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337.
 {¶ 34} At the outset we note that appellant incorrectly argues that the court's denial of the motion to suppress was based upon a theory of vicarious consent. To the contrary, the basis of the court's denial was the victim's consent, to wit:
 {¶ 35} "The Court finds that [the victim] not only consented but was a willing participant in this telecommunications act. The Court finds that she actively provided the phone number voluntarily, [and] she knew what she would ask once on the phone[.]"
 {¶ 36} The court's findings with respect to vicarious consent were made as an alternative basis for the denial. Because the court did not base its decision upon vicarious consent, appellant's first assignment of error turns upon whether the victim did in fact provide consent, or whether such consent was coerced.
 {¶ 37} Pursuant to R.C. 2933.52(B), the interception of a wire, oral, or electronic communication is generally illegal except when "one of the parties to the communication has given prior consent to the interception." R.C. 2933.52(B)(3).
 {¶ 38} The consent exception of R.C. 2933.52(B)(3) allows for a "controlled" phone call, if the police obtain the consent of one of the parties to the communication. The Ohio Supreme Court has held, "neither the federal constitution nor state law requires the suppression of evidence obtained by the warrantless recording of a telephone conversation between a consenting police informant and a non-consenting defendant." State v. Geraldo
(1981), 68 Ohio St. 2d 120, syllabus. See also, State v.Childs, 88 Ohio St.3d 558, 567, 200-Ohio-425.
 {¶ 39} Testimony provided at the suppression hearing established the victim consented to the phone call and that such consent was not coerced. The victim testified as follows:
 {¶ 40} "Q. That was a voluntary call, wasn't it?
 {¶ 41} "A. Yes
 {¶ 42} "Q. When you were asked if you wanted to consent to do this, you said that, yes you would do it right?
 {¶ 43} "A. Yes."
 {¶ 44} The victim further testified that the police informed her that she was not required to make the phone call, but she told them she was willing to make the call. Likewise, the police officer who arranged the call testified that there were no threats or coercion used to obtain the victim's consent. Instead, the police officer stated that the victim willingly provided appellant's cell phone number and initiated the "controlled" phone call.
 {¶ 45} The evidence clearly demonstrates that the victim consented to the "controlled" phone call. Absent was any evidence of coercion or threats. Accordingly, the "controlled" call did not violate R.C. 2933.52, predicated upon the consent exception of R.C. 2933.53(B)(3). Therefore, appellant's motion to suppress was properly denied. Appellant's first assignment of error is without merit.
 {¶ 46} Under his second assignment of error, appellant argues that he was denied a fair trial due to ineffective assistance of counsel. In support of this argument, appellant cites to his defense counsel's failure to object to various instances of other bad acts evidence and defense counsel's failure to issue a motion in limine to reduce the amount of such evidence.
 {¶ 47} Both the Ohio Supreme Court and this court have adopted the following two-pronged test articulated in Stricklandv. Washington (1984), 466 U.S. 668, to determine whether an accused has received ineffective assistance of counsel:
 {¶ 48} "First, a defendant must be able to show that his trial counsel was deficient in some aspect of his representation. * * * This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the `counsel' guaranteed by both the United States and Ohio Constitutions. * * *
 {¶ 49} "Second, a defendant must show that the deficient performance prejudiced his defense. * * * This requires a showing that there is `a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' * * * `A reasonable probability is a probability sufficient to undermine confidence in the outcome.' * * *" (Citations omitted.) State v. Swick, 11th Dist. No. 97-L-254, 2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at 4-5. See, also,State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 50} On the issue of counsel's ineffectiveness, the defendant bears the burden of proof because, in Ohio, every properly licensed attorney is presumed to be competent. State v.Smith (1985), 17 Ohio St.3d 98, 100. To overcome this presumption, the defendant must demonstrate that "the actions of his attorney did not fall within a range of reasonable assistance." State v. Henderson (Sept. 29, 2000), 11th Dist. No. 99-T-0001, 2000 Ohio App. LEXIS 4579, at 22.
 {¶ 51} Appellant first contends that his defense counsel was ineffective because he opened the door for the introduction of other bad acts evidence, and failed to object to such evidence, regarding appellant's prior and contemporaneous relationships with the victim's classmates. Specifically, appellant argues that by opening the door and failing to object, his defense counsel allowed for multiple admissions of evidence as to his relationships with the victim's classmates.
 {¶ 52} This portion of appellant's second assignment of error is not well-taken, as defense counsel's allowance of other bad acts evidence in this instance involved trial strategy. Specifically, one of appellant's trial strategies was clear — establish the victim as an imaginative twelve-year-old who was jealous of appellant's relationship with her classmates, thereby providing her an improper motive to fabricate the sexual encounters. To support this theory, evidence of appellant's contemporaneous and prior relationships with the victim's classmates was necessary.
 {¶ 53} Moreover, evidence of appellant's contemporaneous relationship with a classmate was used by counsel in attempting to establish that appellant was not with the victim when the sexual encounters allegedly took place. In particular, defense counsel tried to demonstrate that appellant was talking with a classmate via phone when some of the sexual encounters allegedly occurred.
 {¶ 54} Defense counsel's strategy was reiterated during closing argument. The closing argument again evaluated appellant's relationship with the victim's classmates to establish that the victim fabricated her allegations due to jealousy.
 {¶ 55} Defense counsel's use of appellant's prior relationships with the victim's classmates clearly represented a questionable and risky trial strategy. However, "debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. * * * In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel." (Internal citations omitted.) Swick at 5-6.
 {¶ 56} A reviewing court must refrain from second-guessing strategical decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance.State v. Adkins, 5th Dist. No. CA-906, 2002-Ohio-3942, at ¶ 20, citing Strickland. Accordingly, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time of trial, as there are numerous strategies by which counsel can provide effective assistance of counsel in any given case. Adkins at ¶ 21, citing Strickland.
 {¶ 57} Although defense counsel's strategy allowed the prosecution to introduce evidence of other bad acts, clearly counsel believed this risk was outweighed by the advantage of establishing his defense theories. Due to the overwhelming amount of inculpatory evidence presented by the state, defense counsel was left with relatively few options. Accordingly, he attempted to establish his theories of a jealous, motivated victim, and that appellant was not with the victim when the sexual encounters allegedly occurred, via evidence of appellant's relationships with the victim's classmates.
 {¶ 58} Again, we must refrain from attempting to ascertain whether defense counsel's strategy was appropriate. We will not question counsel's implementation of this risky trial strategy, as such strategy falls within a wide range of reasonable legal assistance. Accordingly, appellant cannot claim that his defense counsel's strategy regarding the relationships with the victim's classmates resulted in ineffective assistance of counsel. This portion of appellant's second assignment of error is not well-taken.
 {¶ 59} Next, appellant contends that his counsel's representation was ineffective due to counsel's failure to object to other bad acts evidence regarding testimony that he smoked marijuana with his children's friends and that, under his supervision, he allowed young boys and girls to sleep together. The record shows that the victim first testified that appellant would smoke marijuana with his children's friends. Defense counsel failed to object, but the court sua sponte instructed the jury to disregard this testimony. Subsequently, counsel failed to object to the testimony of appellant's ex-wife regarding appellant smoking marijuana with his children's friends and allowing young boys and girls to sleep together.
 {¶ 60} It is well-established that this court will presume that the jury followed the trial court's curative instructions.State v. Seitz, 11th Dist. No. 2001-P-0123, 2003-Ohio-1879, at ¶ 16, citing State v. Davie, 80 Ohio St.3d 311, 317,1997-Ohio-341. As such, any error on the part of trial counsel by failing to object to the victim's testimony regarding smoking marijuana with children was abrogated by the court's curative instruction. In short, appellant cannot demonstrate that he was prejudiced by appellant's failure to object to the victim's testimony.
 {¶ 61} With respect to defense counsel's failure to object to the testimony of appellant's ex-wife, it is well-established that "failure to object, standing alone, is insufficient to sustain a claim of ineffective assistance of counsel." State v. Bennett,
11th Dist. No. 2002-A-0020, 2005-Ohio-1567, at ¶ 70. Instead, trial counsel's failure to object must prejudice appellant.State v. Brazzon, 11th Dist. No. 2001-T-0050, 2003-Ohio-6088, at ¶ 74. To establish prejudice, appellant is required to prove that there existed a reasonable probability that the results of the trial would have been different without counsel's errors. Id.
 {¶ 62} Assuming defense counsel's failure to object to the testimony of appellant's ex-wife was error, such error did not prejudice appellant in light of all the properly admitted evidence. As will be established under our analysis of appellant's sixth and seventh assignments of error, there was substantial evidence which demonstrated an on-going sexual relationship between appellant and the victim. This evidence included testimonial evidence, countless instant messages between appellant and the victim, records of voluminous phone calls between appellant and the victim, the "controlled" phone call, and physical evidence of sexual abuse. Accordingly, counsel's failure to object to the de minimus testimony of appellant's ex-wife fails to establish that there existed a reasonable probability the results of the trial would have been different had an objection been made. This portion of appellant's second assignment of error is also not well-taken.
 {¶ 63} Based upon the foregoing analysis, appellant did not receive ineffective assistance of counsel. Specifically, defense counsel's opening the door for other bad acts evidence, and failure to object did not result in ineffective assistance of error. Thus, counsel's failure to file a motion in limine to limit the stated other bad acts evidence also did not result in ineffective assistance of counsel. Appellant's second assignment of error is without merit.
 {¶ 64} For purposes of clarity, we will address appellant's remaining assignments of error out of order. Under his fourth assignment of error, appellant contends that the trial court erred in allowing the hearsay testimony of the victim's female friend. Appellant maintains that the court improperly relied upon the "recent fabrication" exception to the hearsay rule.
 {¶ 65} The record demonstrates appellant objected to the female friend's testimony as to any hearsay statements made by the victim to the female friend. In particular, appellant wanted to exclude any statements made by the victim to the female friend in late August 2003, which implicated appellant in a sexual relationship with the victim.
 {¶ 66} Relying upon Evid.R. 801(D)(1), the court stated, on the record, that the statements were not hearsay as they were being offered to rebut appellant's defense theory of improper motive and improper influence. But the court also found, in the alternative, that the statements were not hearsay as they were offered to rebut the defense's theory of the victim's recent fabrication. Nevertheless, we must first determine whether the court's primary basis for overruling appellant's hearsay objection, i.e., improper influence and improper motive, was proper.
 {¶ 67} Pursuant to Evid.R. 801(D)(1), a statement is not hearsay if:
 {¶ 68} "(1) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]"
 {¶ 69} In short, a prior consistent statement, which falls under Evid.R. 801(D)(1)(b), is not hearsay when used to rebut an express or implied charge of improper influence or motive. See, e.g. State v. Totarella, 11th Dist. No. 2002-L-147,2004-Ohio-1175, at ¶ 46. However, Evid.R. 801(D)(1)(b) only applies "when those statements were made before the charged recent fabrication or improper influence or motive." Id.
 {¶ 70} Here, the victim/declarant, testified at trial and was subject to cross-examination concerning statements made to her female friend regarding a sexual relationship with appellant. The female friend's testimony was consistent with the declarant's testimony. Thus, we must determine whether the testimony was offered to rebut an express or implied charge of improper influence or motive.
 {¶ 71} A review of the record before us clearly demonstrates appellant's attempt to establish an improper influence and motive as a defense. As aptly noted by the trial court:
 {¶ 72} "[O]n cross-examination [appellant's defense counsel] accused [the victim] of having some form of improper influence or motive. There are many of those expressed or implied inferences that come to mind, one that comes to the Court's recollection is the accusation that [the victim] is bringing these criminal charges or participating as a complaining witness in order to extend her proximity and contact with [appellant] and contact with this [appellant.] * * * The improper influence that was intimated by [appellant's counsel] was that the police — two police officers, * * * [a victim's advocate], and [the victim's mother] were improperly influencing her, and none of that would have taken place until * * * September 4th[.]"
 {¶ 73} Each instance of the alleged improper motive and improper influence occurred after the prior consistent statements were made by the victim to her female friend. Specifically, the improper influence of the victim's mother, police officers, and children's advocate did not occur until after the victim's statements to her female friend. As a result, the prior consistent statements have met the prerequisites of Evid.R. 801(D)(1)(b) and such statements are not hearsay. The trial court properly overruled appellant's hearsay objection, and appellant's fourth assignment of error is without merit.
 {¶ 74} Under his third assignment of error, appellant argues that the court erred by failing to grant his Crim.R. 29(A) motion for acquittal, as the state failed to prove that appellant knew or had reason to know that alcohol would be consumed at the July 17, 2003 pool party. We disagree.
 {¶ 75} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim.R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 76} Pursuant to R.C. 4301.69(C):
 {¶ 77} "No person shall engage or use accommodations at a hotel, inn, cabin, campground, or restaurant when the person knows or has reason to know either of the following:
 {¶ 78} "(1) That beer or intoxicating liquor will be consumed by an underage person on the premises of the accommodations that the person engages or uses, unless the person engaging or using the accommodations is the spouse of the underage person and who is not an underage person, or is the parent or legal guardian of all of the underage persons, who consume beer or intoxicating liquor on the premises and that person is on the premises at all times when beer or intoxicating liquor is being consumed by an underage person[.]"
 {¶ 79} The elements of R.C. 4301.69(C) required the state to show evidence of the following: (1) appellant used hotel accommodations; (2) appellant had knowledge or had reason to have knowledge that alcohol would be consumed by an underage individual; and (3) the underage individual consumed the alcohol on the premises of the hotel accommodations used by appellant.
 {¶ 80} The victim provided testimony which established appellant provided her with alcohol from his hotel room during the pool party. Specifically, the victim testified that appellant was the only adult at the pool party and that she had obtained beer and vodka from appellant's hotel room. Additional evidence established that the alcohol consumed in the hotel room belonged to appellant and that underage children were drinking alcohol in a room reserved by appellant for his children. Such evidence, when viewed in a light most favorable to prosecution, was sufficient to establish the elements of R.C. 4301.69(C). Thus, appellant's third assignment of error is without merit.
 {¶ 81} Appellant's seventh assignment of error contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal as to the remaining counts of rape, gross, sexual imposition, and furnishing alcohol to a minor. He merely argues that his convictions "are not supported by sufficient evidence and, therefore, should be reversed."
 {¶ 82} Although appellant's seventh assignment of error states a general contention, he has failed to present this court with any legal analysis or citations to legal authority that would support this assignment of error. App.R. 16(A)(7) provides that appellant shall include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons insupport of the contentions, with citations to the authorities,statutes, and parts of the record on which appellant relies." (Emphasis added.) See, also, Loc.R. 16.
 {¶ 83} This court "may disregard an assignment of error presented for review" if the party raising it fails to comply with the above requirements. App.R. 12(A)(2). Thus, appellant's failure to support his contention with any substantive legal analysis results in a waiver of his second assignment of error.
 {¶ 84} Nevertheless, our thorough examination of the record, and application of the previously stated standard of review on a motion for acquittal, demonstrates that appellant's general sufficiency argument is without merit.
 {¶ 85} To obtain appellant's conviction on the counts of rape and gross sexual imposition, the state was required to present sufficient evidence of the following: (1) appellant engaged in sexual conduct with the victim; (2) appellant engaged in sexual contact with the victim; (3) sexual contact occurred when the victim was under the age of thirteen; and (4) sexual conduct occurred when the victim was under the age of thirteen. R.C.2907.02(A)(1)(b); R.C. 2907.05(A)(4).
 {¶ 86} R.C. 2907.01(A)(1) defines sexual conduct as:
 {¶ 87} "[V]aginal intercourse between a male and female * * * without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 88} R.C. 2907.01(A)(2) defines sexual contact as:
 {¶ 89} "[A]ny touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 90} An examination of the victim's testimony demonstrates that there was sufficient evidence presented on each count of gross-sexual imposition and rape. It is important to note that the believability of the victim's testimony is not at issue when analyzing a sufficiency challenge. Instead, our sufficiency analysis is restricted to "whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury[.]" State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13.
 {¶ 91} The victim's testimony established that she was twelve years old when each sexual encounter occurred. During these multiple encounters, appellant engaged in five separate instances of sexual conduct. Specifically, the victim testified that appellant's penis had penetrated her vaginal cavity, appellant had digitally penetrated her vaginal cavity on multiple occasions, and appellant had penetrated her vaginal cavity with his tongue. She further testified as to six separate instance of sexual contact. These instances included appellant rubbing his genitals against the victim's genitals, appellant fondling the victim's breast, and appellant rubbing the victim's genitals with his hand.
 {¶ 92} Although the victim was unable to provide the specific dates when each sexual encounter occurred, the specific date of sexual contact or sexual conduct is not an element of either gross-sexual imposition or rape. Thus, the trial court properly overruled appellant's motion for acquittal regarding the counts of rape and gross-sexual imposition.
 {¶ 93} The victim's testimony also provided sufficient evidence with respect to the counts of furnishing alcohol to a minor. Pursuant to R.C. 4301.69(A),
 {¶ 94} "Except as otherwise provided in this chapter, no person shall furnish [alcohol] to an underage person, unless given by a physician in the regular line of the physician's practice or given for established religious purposes or unless the underage person is accompanied by a parent, spouse who is not an underage person, or legal guardian."
 {¶ 95} The victim testified that, on multiple occasions, appellant furnished her with alcohol. In particular, her testimony revealed that appellant provided her with alcohol during each of their sexual encounters at the rest stop. She stated that he had given her beer, Jim Beam Coolers, and green-melon wine. Accordingly, sufficient evidence of appellant's furnishing alcohol to the victim, on multiple occasions, was presented, and the trial court properly overruled appellant's motion for acquittal.
 {¶ 96} Accordingly, even assuming appellant provided an adequate legal analysis under his second assignment of error, his argument would not be well-taken. Appellant's seventh assignment of error is without merit.
 {¶ 97} Under his sixth assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. Appellant argues that his convictions resulted from the uncorroborated, incredible testimony of the victim. In support of this argument, appellant points to evidence of cell phone calls and hotel/store receipts demonstrating that he was not with the victim on the night of the sexual encounters.
 {¶ 98} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 99} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 100} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 101} Appellant attempted to destroy the credibility of the victim's testimony by submitting evidence of phone records and hotel/store receipts allegedly showing that he was not with the victim during the sexual encounters. The phone records and hotel/store receipts established that during certain specificdates he was either talking on a cell phone or was outside of Ohio when the alleged sexual encounters occurred. However, the victim's testimony and the indictment merely provided a general time span within which each sexual encounter occurred. Also, there was evidence presented that appellant owned multiple cell phones and it was impossible to ascertain whether he was using the cell phone at the recorded times.
 {¶ 102} The cell phone records and hotel/store receipts failed to establish that the victim's testimony regarding the sexual encounters was incredible or unbelievable. Accordingly, the jury was free to believe all, part, or none of the victim's testimony, and we will not substitute our judgment for that of the trier of fact.
 {¶ 103} Moreover, the victim's testimony regarding an on-going sexual relationship, which included appellant providing her with alcohol, was corroborated by additional evidence. The instant messages and phone calls included graphic sexual discussions, and appellant repeatedly professed his love for the victim. In particular, the "controlled" phone call substantiated the victim's allegations regarding the September 4, 2003 sexual encounter and further demonstrated an on-going sexual relationship between the victim and appellant. Moreover, a rape kit established physical injuries to the victim's inner vaginal cavity consistent with fingernail scratches, thereby further supporting the victim's allegations of a sexual encounter that included digital penetration.
 {¶ 104} Ultimately, the evidence presented detailed appellant's psychological manipulation of the twelve-year-old victim and multiple instances of appellant's sexual abuse of the twelve-year-old victim, while providing her with alcohol. Accordingly, the state properly carried its burden of persuasion as competent, credible evidence allowed the jury to convict appellant on all counts. Appellant's sixth assignment of error is without merit.
 {¶ 105} Under his fifth assignment of error, appellant contends that, per Blakely v. Washington (2004), 542 U.S. 296, the trial court erred by sentencing him to prison terms, on his felony convictions, that were greater than the minimum term allowed by statute. We disagree.
 {¶ 106} In Blakely, the defendant pleaded guilty to kidnapping involving the use of a firearm, a class B felony. In the state of Washington, the statutory maximum for a class B felony was ten years; however, other provisions of Washington law limited the range of sentences a judge could impose. Consequently, the "standard" statutory range for the offense to which the defendant pleaded guilty was forty-nine to fifty-three months. Although the guidelines set forth the "standard" sentence, a court could enlarge the "standard" sentence if it found any of a non-exhaustive list of aggravating factors justifying the departure. In Blakely, the trial court determined the defendant acted with "deliberate cruelty" and imposed a sentence of ninety-months, a thirty-seven month upward departure from the "standard."
 {¶ 107} The United States Supreme Court reversed the sentence, holding a trial court may not extend a defendant's sentence beyond the statutory maximum when the facts supporting the enhanced sentence are neither admitted by the defendant nor found by the jury. Id. The court defined the statutory maximum as "the maximum sentence a judge may impose solely on the basis ofthe facts reflected in the jury verdict or admitted by thedefendant." Id. at 303. (Emphasis sic.)
 {¶ 108} Here, appellant was convicted of rape under R.C.2907.02(A)(1)(b), a first degree felony, and gross-sexual imposition under R.C. 2907.05(A)(4), a third degree felony. The minimum statutory prison-term for a first degree felony is three years, while the maximum prison-term is ten years. Furthermore, the minimum prison-term for a third degree felony is one year, while the maximum prison-term is five years. The trial court imposed an eight-year prison term on each of appellant's rape convictions and a three-year prison term on each of appellant's gross-sexual imposition convictions.
 {¶ 109} R.C. 2929.14(B) states:
 {¶ 110} "(B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 111} "(1) The offender was serving a prison term at the time of the offense, or the offender previously served a prison term.
 {¶ 112} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 113} To support its upward departure from the minimum prison-terms, the court relied upon a finding that the shortest prison terms would demean the seriousness of appellant's conduct and not adequately protect the public from future crime.
 {¶ 114} Appellant contends that to overcome the presumption of the minimum prison-terms, the trial court engaged in a fact-finding process when it considered the factors of R.C.2929.14(B)(2). Appellant concludes that the trial court violatedBlakely and, therefore, he was entitled to a minimum prison-term on each of his felony convictions.
 {¶ 115} This court has previously not applied the holding ofBlakely to the sentencing factors of R.C. 2929.14(B). In doing so, we have concluded that the Blakely holding does not render the trial court's findings with respect to these factors constitutionally infirm. See, e.g., State v. Fielder, 11th Dist. No. 2003-L-190, 2005-Ohio-3388; State v. Semala, 11th Dist. No. 2003-L-128, 2005-Ohio-2653; State v. Morales, 11th Dist. No. 2003-L-025, 2004-Ohio-7239. The Fielder court provided the following explanation:
 {¶ 116} "In State v. Morales, 11th Dist. No. 2003-L-025,2004-Ohio-7239, we began our analysis by noting that Blakely
and the prior case law of the United States Supreme Court had not had the effect of depriving a trial judge of the discretion to consider aggravating circumstances in deciding the length of a defendant's sentence; instead, the Blakely decision only held that a trial judge cannot make a factual finding which would result in the imposition of a sentence longer than the maximum prison term permissible under the jury verdict. In other words, we concluded that, under Blakely, the Sixth Amendment right to a jury trial had no application so long as the trial judge was imposing a sentence within the general range of terms permissible based upon the jury verdict. The Morales court then held that the factors set forth in R.C. 2929.14(B) were similar in nature to aggravating circumstances because a trial court's finding concerning the existence of one of the two factors in a particular case only meant that a longer term within the acceptable range could be imposed. As a result, the Morales
court ultimately held that the procedure under R.C. 2929.14(B) did not constitute a violation of the basic constitutional right to a jury trial." Id. at ¶ 44.
 {¶ 117} The clear precedent of this court establishes that the trial court's use of the sentencing factors under R.C.2929.14(B) did not constitutionally invalidate appellant's sentence. Instead, when the trial court made the findings under R.C. 2929.14(B) that the imposition of the shortest prison term for the offenses would demean the seriousness of appellant's conduct and would not adequately protect the public from future crimes, it had the statutory authority to impose sentences which were longer than the statutory minimum. Appellant's fifth assignment of error is without merit.
 {¶ 118} Based upon the foregoing analysis, appellant's seven assignments of error are without merit. We hereby affirm appellant's convictions and sentence.
Ford, P.J., concurs, O'Neill, J., dissents with Dissenting Opinion.