OPINION
{¶ 1} Appellant, James L. Cline, appeals from the March 27, 2007 judgment entry of the Trumbull County Court of Common Pleas. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural Facts
 {¶ 3} Appellant ("Mr. Cline"), was indicted by grand jury on October 12, 2005 for eight counts: counts one and three, rape, in violation of R.C. 2907.02(A)(1)(b)(B) with *Page 2 
life terms of imprisonment; counts two and four, gross sexual imposition, in violation of R.C. 2907.05(A)(4)(B) and felonies of the third degree; count five, rape, in violation of R.C.2907.02(A)(2)(B), a felony of the first degree; and counts six, seven, and eight, gross sexual imposition, in violation of R.C.2907.05(A)(1)(B), felonies of the fourth degree.
 {¶ 4} The charges against Mr. Cline stem from three separate incidents where Mr. Cline fondled and digitally penetrated four young girls. Initially, at his arraignment on October 21, 2005, Mr. Cline pled not guilty. On November 23, 2005, he filed a motion to change his plea to not guilty by reason of insanity and on December 7, 2005, the court ordered Mr. Cline to undergo a forensic exam.
 {¶ 5} Before the jury trial began on July 17, 2006, Mr. Cline filed a motion in limine to prevent the state from referring to his criminal history. The court granted the motion orally on the record before trial, ordering the video confessions to be edited and the witnesses cautioned.
 {¶ 6} The state presented the testimony of twenty-two witnesses: Detective Justin Soroka, Lieutenant Thomas Skoczylas, Officer Richard Kovach, Patrolman Don Calloway, Detective Michael Stabile, Detective Sergeant Michael Merritt, and Sergeant Dan Hudak, all officers of the Warren Police Department; the minor victims: C.R., A.C., J.B., and K.K., and a fifth minor, A.G.; Elizabeth Raley Lewis from Trumbull County Children Services; Kathleen Corturillo from Trumbull Memorial Hospital; Chad Britton and Brenda Gerard, forensic scientists from the Ohio Bureau of Identification and Investigation; Dr. Jason Benjamin Kolvalcik, a Tri-County Child Advocacy Physician; Officer Leslie Nagy and Detective James Robbins of the Niles City Police Department; *Page 3 
Jennifer Fleming, an old girlfriend of Mr. Cline; and Gaynall Shanower, a woman who Mr. Cline referred to as "mom"; as well as Deputy Richard McGrath and Deputy Michael Davis, both from the Trumbull County Sheriffs Department.
 {¶ 7} The state's evidence revealed that the first such incident occurred on July 2, 2005, at Kennedy Park in Niles, Ohio. Two minor girls, A.C., who was eleven at the time, and her cousin, J.B., who was twelve, were playing on the playground after school. The girls observed a black SUV parked in the basketball court that then drove by them a few times before it parked in the woods. A man approached them and asked if they had seen anyone at the basketball hoop, to which they replied "no." The man went between some trees, waited for people to leave the park, and then again approached the girls, this time with a gun, and made the girls walk into the woods. He told them to take off their clothes, and one at a time, told them to touch their toes, while he digitally penetrated them. J.B. also testified that she saw the man masturbating as he digitally penetrated her cousin. As the girls were running away after the assault, A.C. stopped to allow J.B. to catch up and they both saw the black SUV drive away. They later identified Mr. Cline as the man in the black SUV who assaulted them. The girls ran home after the incident and told A.C.'s grandmother. J.B. positively identified Mr. Cline and the SUV in a photo array.
 {¶ 8} The next incident occurred in Warren, Ohio, on September 8, 2005. The minor victim, K.K., who was fifteen at the time, was walking to Harding High School on the railroad tracks, in an area that is locally known as "the trestle." She approached Mr. Cline and asked him for a cigarette. He replied that he was out and that he should get some more. He motioned with a knife and told her to take off her top. He then fondled *Page 4 
her breasts and asked her to take off her bottoms and touch her toes. K.K. complied and Mr. Cline proceeded to digitally penetrate her. Mr. Cline ran off, and K.K. ran home and reported the incident to her mother, who subsequently called the police. At first, K.K. told the police that she did not see Mr. Cline's face because he had threatened her that if she told he would hurt her. He told her that he would know if she did because his brother was a police officer. She gave a description of his clothing and then later identified Mr. Cline in a photo array.
 {¶ 9} An uncharged incident involving thirteen-year-old A.G. occurred on September 13, 2005, as she was walking to school. She sensed someone walking behind her who then grabbed her skirt. She was twisted and fell to the ground. A man with dark hair touched her vaginal area over her clothing. A.G. managed to kick him in the shin and the man jogged away. When shown a photo array, A.G. picked out two people because she was unsure, and in court she refused to look around the courtroom to try to identify her assailant.
 {¶ 10} The fourth incident also occurred in Warren one day later on September 14, 2005. The minor victim, C.R., was fourteen at the time and was walking to school when she thought she heard a jogger coming from behind. She stepped aside without looking behind her and all of a sudden Mr. Cline came up and grabbed her left thigh and right breast. As he was running away, she yelled to him to stop and quickly wrote down the license plate number of the red van he was driving. She ran home and told her mom who then reported the incident to the police. C.R. positively identified both Mr. Cline and the van in a photo array, as well as in court. *Page 5 
 {¶ 11} On that same morning, September 14, 2005, Lieutenant Thomas Skoczylas, of the Warren Police Department was on his way to work when he received a call from dispatch that a suspect was fleeing in the area. Lieutenant Skoczylas identified Mr. Cline and the license plate number of the van and radioed to dispatch that he was following the suspect. When Mr. Cline ran a red light, Lieutenant Skoczylas activated the strobe and wig-wag lights of his undercover narcotics vehicle indicating to Mr. Cline to pull over and stop his vehicle. Mr. Cline finally stopped the van and at that moment Patrolman Kovach of the Warren Police Department pulled up for assistance.
 {¶ 12} Mr. Cline got out of the vehicle and was directed to put his hands behind his head. He was wearing a light colored aqua t-shirt and a pair of blue break-away gym pants. Instead of putting his hands on the vehicle as Patrolman Kovach ordered him to do, Mr. Cline turned and started running. He led the officers on a chase through several backyards and ultimately scaled a fence, losing his break-away pants in the process.
 {¶ 13} Detective Michael Stabile of the Warren Police Department received a call from dispatch that Mr. Cline was fleeing the scene and drove his cruiser to that area. He saw Mr. Cline cross Laird Avenue, quickly exited his cruiser, and told Mr. Cline to stop. Mr. Cline stopped, turned towards him, and dropped into a fighting stance. Detective Stabile hit him with his expandable baton in the left arm to disarm him, and Mr. Cline fell to the ground, where he was then handcuffed by Detective Stabile with the assistance of Officer Parana. Patrolman Kovach then arrived at the scene and confirmed that Mr. Cline was the suspect they were chasing. *Page 6 
 {¶ 14} A search of the van that Mr. Cline was driving, which he had borrowed from Ms. Shanower, a woman he called "mom," revealed a black stocking cap, a blue sweatshirt, an olive colored shirt, a gray sweatshirt and a long sleeve grey shirt; two knives, one military style with a compass, the other a bread knife with serrated edges and about eleven inches long; a package of helium coils to repair threads, a white plastic grocery bag, and a military knife sheath. The DNA type consistent with the minor victim, K.K. was later found on the knife.
 {¶ 15} Later that morning Mr. Cline was interviewed by the Warren police where he denied any allegations of rape or gross sexual imposition. However, toward the end of the two-hour interview he admitted that he had run up to C.R. that morning as she was walking to school and that he had grabbed her from behind. He then admitted to touching the girl inappropriately. He also relayed that he was not sure what possessed him to take that action and that was why he was fleeing from the police when he was pulled over. He denied all of the other allegations.
 {¶ 16} Later that day, Mr. Cline was again interviewed by the Warren police with the Niles police present. He admitted that he grabbed the two girls' breasts at the park in Niles and then ran away, but vehemently denied that he ever digitally penetrated the girls. Edited versions of the interview confessions were shown to the jury over the objection of Mr. Cline since he was depicted in his prison garb in the videos.
 {¶ 17} Taped phone calls from the prison between Mr. Cline and Ms. Fleming were also played for the jury. Ms. Fleming testified that she had dated Mr. Cline about five years ago for approximately one year. She had let him borrow her black four-door Mountaineer SUV during June of 2005. While Mr. Cline was using the vehicle, she *Page 7 
looked into the vehicle and observed a black gun and a pair of underwear. When she inquired as to these items, Mr. Cline informed her that those items belonged to his mother and that he was going to sell or pawn the gun. He told her in the first two phone calls from the prison that he was in jail due to an altercation that occurred with someone who hit his van. After she learned of the true allegations against him, she confronted him in the third call. Mr. Cline admitted to fondling the girls' breasts and that he had a "sickness."
 {¶ 18} The state then rested its case in chief. Mr. Cline renewed his motion for a mistrial due to Ms. Fleming's reference to Mr. Cline staying in a halfway house and the court denied the motion and gave a curative instruction to the jury. Mr. Cline then made a motion for a directed verdict, which was overruled.
 {¶ 19} On July 20, 2006, at the close of the state's case, after the jury was released and while Mr. Cline was preparing for transfer from the courthouse to the jail, he managed to slip off his handcuffs and flee. He turned toward Deputy McGrath of the Trumbull County Sheriff's Office and said, "Not today, Deputy," as he ran off. A call was sent out to dispatch that Mr. Cline had escaped and that he was running west in the direction of the Mahoning River. Deputy McGrath received another report over dispatch that a man was floating in the Mahoning River by the West Market Street Bridge. When Deputy McGrath arrived at the bridge, Mr. Cline came floating past. Mr. Cline said he could not swim and refused to leave the river so Deputy Michael Davis, also of the Trumbull County Sheriff's Office, physically retrieved Mr. Cline from the water.
 {¶ 20} The following day the court individually voir dired all the jurors after one of the alternate jurors, Ms. Kline, reported to the court that she had seen Mr. Cline fleeing *Page 8 
the courthouse as she waited for her ride. Since Ms. Kline felt that this would not prejudice her decision in any way and that she would not inform the other jurors of Mr. Cline's attempted flight, the court overruled Mr. Cline's objection that Ms. Kline should be dismissed. In response to Mr. Cline's second objection, the court ruled to hold the objection in abeyance to review the matter if the situation arose that Ms. Kline would be needed as a juror in this case.
 {¶ 21} The state then made a motion to reopen its case in chief due to Mr. Cline's attempted flight, and the court granted the motion, allowing the state to present the testimony of Deputy McGrath and Deputy Davis regarding Mr. Cline's attempted flight the day before. The state then rested, and Mr. Cline renewed his motion for mistrial and motion for directed verdict; both of which were overruled. The defense then rested.
 {¶ 22} The jury returned a verdict of guilty on all counts contained in the indictment on July 24, 2006. Thus, Mr. Cline was convicted of rape (counts 1 3), in violation of R.C. 2907.02(A)(1)(b)(B) and with life terms of imprisonment; gross sexual imposition (counts 2 4), in violation of R.C. 2907.05(A)(4)(B) and felonies of the third degree; rape (count 5), in violation of R.C. 2907.02(A)(2)(B) and a felony of the first degree; and gross sexual imposition (counts 6, 7, 8), in violation of R.C. 2907.05(A) (1 )(B) and felonies of the fourth degree.
 {¶ 23} On February 9, 2007, a sexual predator hearing was held and after considering all of the factors in R.C. 2950.09(B)(2), as well as all of the stipulations presented by the parties, the court on March 7, 2007, classified Mr. Cline as a sexual predator. *Page 9 
 {¶ 24} A sentencing hearing was then held on March 15, 2007. Mr. Cline was sentenced to life without parole eligibility for ten years for counts one and two, rape; five years on each count for counts two and four, gross sexual imposition; ten years on count five, rape; and eighteen months each for counts six, seven, and eight, gross sexual imposition. Counts one, two and three, were ordered to be served consecutively to each other; while counts four, five, six, seven, and eight were ordered to be served concurrently to each other and to counts one, two, and three, for a total prison term of life without parole eligibility until Mr. Cline has served a minimum of twenty-five years. Further, Mr. Cline was ordered to submit to DNA testing, notified that post-release control in this case was mandatory, and further disapproved for placement into a shock incarceration program or for placement in an intensive prison program.
 {¶ 25} Mr. Cline now timely appeals and raises the following seven assignments of error:
 {¶ 26} "[1.] The trial court erred, to the prejudice of the appellant, by admitting video, rather than audio, recordings of interviews between the appellant and the police where the appellant was presented in prison garb, shackles, and handcuffs.
 {¶ 27} "[2.] The trial court erred and abused its discretion, to the prejudice of the appellant, by failing to grant his motion for mistrial.
 {¶ 28} "[3.] The trial court erred, to the prejudice of the appellant, by allowing the state to reopen their case and submit evidence of the appellant's attempted flight.
 {¶ 29} "[4.] The trial court erred by allowing into evidence testimony from a nurse that did not fall under the medical diagnosis exception, since it was not for the purpose of diagnosis, but was to assist the prosecution in their case against the appellant. *Page 10 
 {¶ 30} "[5.] The trial court's adjudication of appellant as a sexual predator is against the manifest weight of the evidence.
 {¶ 31} "[6.] The appellant's convictions are against the manifest weight of the evidence.
 {¶ 32} "[7.] The trial court erred and abused its discretion, to the prejudice of the appellant, by permitting an alternate juror who witnessed the attempted flight of the appellant to remain a juror, over the objection of counsel for the appellant."
 {¶ 33} Depictions of Appellant in Prison-Garb
 {¶ 34} In his first assignment of error, Mr. Cline contends that the trial court erred by admitting into evidence videotapes of his police interview confessions with the Warren and Niles Police Departments. Mr. Cline contends that the audio, instead of the video, should have been presented to the jury since he was depicted in his prison garb and in shackles and handcuffs, which negatively influenced the jury and resulted in reversible error. We find this contention to be without merit.
 {¶ 35} "The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion." State v.Kidd, 11th Dist. No. 2006-P-0087, 2007-Ohio-6562, ¶ 59, citing State v.Vinson, 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶ 49, citing State v.Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, ¶ 20, citingState v. Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, 2001 Ohio App. LEXIS 1391, 4-5, citing Renfro v. Black (1990), 52 Ohio St.3d 27,32. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is *Page 11 
unreasonable, arbitrary, or unconscionable. Id., citing State v.Montgomery (1991), 61 Ohio St.3d 410, 413, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 36} Mr. Cline argues that the trial court committed reversible error in admitting into evidence videotapes of his confessions in which he is depicted in prison garb. Mr. Cline argues that the jury was prejudiced since he was presented in prison garb, shackles, and handcuffs and that an audio version of the videos should have been presented.
 {¶ 37} A review of the videos, however, reveals that the audio is not of an exceptional quality and is rather grainy. Thus, it would be very hard to determine what Mr. Cline was saying in total context without viewing his body language. Mr. Cline's argument is also highly exaggerated since he is depicted in the videos from the waist up, with his hands free, and smoking, with a glass of water, but no shackles in sight.
 {¶ 38} Two videos were played for the jury. The first was about ten minutes in length and depicted Mr. Cline from the waist up, wearing a green, v-neck type of prison garb, more suggestive of hospital scrubs. His hands are unshackled, and he is given permission to smoke freely. In the second video, which is approximately nineteen minutes in length, Mr. Cline appears again in a similar fashion, from the waist up, smoking freely with his hands free, albeit this time in an orange prison garb shirt.
 {¶ 39} Most fundamentally, the jury was advised prior to viewing the videotape that Mr. Cline was in custody when he gave the interview. Thus, his appearance in prison garb is not surprising. The jury was aware that Mr. Cline had been apprehended earlier in the day and was being held for questioning. Thus, even if we were to find that it was error to admit such a video, the error would be harmless since the jurors were *Page 12 
well aware of his custody status at the time of the interview. SeeState v. Bell (June 6, 1997), 4th Dist. No. 96CA2472, 1997 Ohio App. LEXIS 2593, 9-10, where the court determined that "[t]he United States Supreme Court has held that `an accused should not be compelled to stand trial in prison garb because the presumption of innocence might be impaired.' Estelle v. Williams (1976), 425 U.S. 501, 504. However, the court also cited with approval a lower court opinion which held that it was harmless error for a defendant charged with committing a crime while in confinement to be tried in prison garb. Id., citing Estelle at 506, citing U.S. ex rel. Stahl v. Henderson (C.A.5, 1973), 472 F.2d 556. The rationale for this outcome was that `no prejudice can result from seeing that which is already known.' Id., quoting Estelle at 506, quotingHenderson at 556." See, also, Harold v. Sec. Dept. Corrections (C.A.11, 2006), 462 F.3d 1319, 1323-24; Singleton v. State (Feb. 15, 2001), No. SC93035, 2001 Fla. LEXIS 846, 15.
 {¶ 40} Under the circumstances of this case, the prejudicial effect does not outweigh the probative value of Mr. Cline's admissions to gross sexual imposition in two of the three incidents. We determine that the trial court did not abuse its discretion in admitting these highly relevant videos into evidence.
 {¶ 41} Mr. Cline's first assignment of error is without merit.
 {¶ 42} Motion for Mistrial
 {¶ 43} In his second assignment of error, Mr. Cline contends that the trial court abused its discretion in denying his motion for mistrial since a review of the record reveals that the videotape and witness testimony referenced past events that prejudiced the jury. Specifically, Mr. Cline contends that during the cross-examination of Ms. *Page 13 
Fleming, comments were elicited that tainted the jury. We find this contention to be without merit.
 {¶ 44} "The declaration of a mistrial is an extreme remedy. `Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.'" State v. Kitcey, 11th Dist. No. 2007-A-0014, 2007-Ohio-7124, ¶ 59, citing State v. Franklin (1991),62 Ohio St.3d 118, 127, citing Illinois v. Summerville (1973),410 U.S. 458, 462-463; Arizona v. Wa. (1978), 434 U.S. 497, 505-506.
 {¶ 45} Furthermore, "[t]he decision whether to grant or deny a mistrial under Crim.R. 33 rests within the sound discretion of the trial court."State v. Patterson, Jr. (May 22, 1998), 11th Dist. No. 96-T-5439, 1998 Ohio App. LEXIS 2289, 19, citing Franklin at 127. "Moreover, a jury is presumed to follow the instructions given to it by the trial judge." Id., citing State v. Loza (1994), 71 Ohio St.3d 61, 75; State v.Henderson (1988), 39 Ohio St.3d 24, 33.
 {¶ 46} The court granted Mr. Cline's motion in limine before the start of the jury trial to prohibit any reference to Mr. Cline's previous convictions. During cross-examination by Mr. Cline's counsel, the state's witness, Ms. Fleming, Mr. Cline's ex-girlfriend who allowed him to borrow the vehicle that was identified in the Niles incident, made a reference that alluded to Mr. Cline's past criminal convictions. The following colloquy occurred between Mr. Cline's own counsel, Mr. Goodman, and Ms. Fleming:
 {¶ 47} "Mr. Goodman: When is the next time you saw James?"
 {¶ 48} "Ms. Fleming: I can't remember. He was at a halfway house."
 {¶ 49} After Ms. Fleming's fleeting reference, Mr. Cline moved for a mistrial, arguing that the comment violated the court's order in limine. Mr. Cline was unwilling to *Page 14 
move for a curative instruction, and upon the state's request, the court gave the following curative limiting instruction to the jury: "Ladies and gentlemen, I'm going to direct you to disregard the last answer that was given by this young lady. It is not proper that I explain why. I'm going to ask you to disregard the last answer. That is not part of the evidence that is supposed to be before this jury. Remember what I told you at the beginning. It is not proper evidence and you can't use it for any purpose, so set that aside in your mind."
 {¶ 50} Mr. Cline argues that Ms. Fleming's reference to observing him at a halfway house prejudiced the jury to such a degree that a mistrial is warranted. However, the reference to a "halfway house" is fleeting, isolated in nature, and somewhat ambiguous.
 {¶ 51} As we stated in an analogous situation in State v. Patterson,Jr., supra, where a police lieutenant testified that a witness told him he "wasn't aware [the defendant] was out of jail:" "In the case at hand, the reference to appellant's prior incarceration was an isolated incident that was fleeting in nature. The trial judge gave a clear and unequivocal instruction to the jury that it was to disregard [the witness's] statement and not consider it for any reason. In light of the trial court's curative instruction, we have no reason to believe that the jury failed to disregard the statement. The trial court did not abuse its discretion in denying the motion for a mistrial." Id. at 20, citing State v. Garner (1995), 74 Ohio St.3d 49, 59; State v. Glenn
(1986), 28 Ohio St.3d 451, 455; State v. Blair (1990),70 Ohio App.3d 774, 781-782. See, also, State v. Chaiffetz (June 17, 1999), 3rd Dist. No. 9-98-20, 1999 Ohio App. LEXIS 2673, where a *Page 15 
witness made reference to the appellant's polygraph test and the court found it to be an isolated, fleeting in nature incident, that was cured by the court's limiting instruction.
 {¶ 52} Mr. Cline's second assignment of error is without merit.
 {¶ 53} Evidence of Appellant's Attempted Flight
 {¶ 54} In his third assignment of error, Mr. Cline argues that the court erred to his prejudice by allowing the state to reopen its case and submit evidence of his attempted flight. Specifically, Mr. Cline argues that his attempted flight is not probative of any of the issues at trial and was extremely prejudicial. We find this argument to be without merit.
 {¶ 55} "R.C. 2945.10 lists the order of proceedings during a trial. R.C. 2945.10(D) states, "* * * the court, for good reason, in furtherance of justice, may permit evidence to be offered by either side out of its order." State v. Pruitt, 11th Dist. No. 2001-T-0101, 2003-Ohio-1882, ¶ 27, citing R.C. 2945.10. "It is well established that the trial court, in maintaining reasonable control over the mode and presentation of evidence, has wide discretion to permit evidence to be offered out of order." Id., citing State v. Bayless (1976), 48 Ohio St.2d 73, paragraph three of the syllabus, vacated on other grounds (1978), 438 U.S. 911. "To this end, a court may allow a party to reopen its case to present additional evidence." Columbus v. Grant (1981), 1 Ohio App.3d 96, 97.
 {¶ 56} "Any claim that a trial judge erred in allowing testimony to be presented out of order must be accompanied by a demonstration of resulting prejudice." Id. at ¶ 28, citing Bayless at 73. "Therefore, a decision by the trial court to allow a party to reopen its case to offer additional evidence will be reversed only upon a showing of an *Page 16 
abuse of discretion." Id., citing State v. Peterson (June 28, 1999), 12th Dist. No. CA98-08-178, 1999 Ohio App. LEXIS 2984, 4. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 57} On July 20, 2006, the state rested its case in chief and the jury was adjourned for the day prior to the defense beginning its case. Around that time, Mr. Cline was being prepared for transfer to the Trumbull County jail. He managed to break free and fled on foot, and apparently dove into the nearby Mahoning River. Mr. Cline was reapprehended as he floated downstream.
 {¶ 58} The following day, July 21, 2007, before the defense presented their case, the state made a motion to reopen its case to present evidence of Mr. Cline's attempted flight arguing that it was newly discovered evidence. The court granted the state's motion to reopen to introduce appropriate evidence of Mr. Cline's attempted flight. Deputy Richard McGrath and Deputy Michael Davis testified as to Mr. Cline's attempted flight and reapprehension and the state then rested its case in chief.
 {¶ 59} It is well established that the trial court has broad discretion in ordering the events of trial. Further, in this case, the state had just rested its case in chief when the attempted flight occurred. Thus, the jury was not confused as to the order of events.
 {¶ 60} Mr. Cline contends that evidence of his attempted flight was not probative of the issues at trial and that it was prejudicial to the jury. However, it is also well established that the flight of an accused from justice is admissible as evidence of the consciousness of guilt. As the Supreme Court of Ohio held in State v. Eaton (1969),19 Ohio St.2d 145, 160: "It is to-day [sic] universally conceded that the fact of an accused's *Page 17 
flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.' 2 Wigmore on Evidence (3 Ed.), 111, Section 276, and cases cited." State v.Hagwood (June 2, 1995), 11th Dist. No. 94-L-016, 1995 Ohio App. LEXIS 2302, citing Eaton at 160.
 {¶ 61} It is clear in this case that Mr. Cline was attempting to flee justice. In light of Mr. Cline's attempted flight after the state rested its case in chief, and before the defense began their presentation of evidence, we find no abuse of discretion in the court's grant to reopen the state's case in order to present this newly discovered evidence that is evidence of consciousness of guilt.
 {¶ 62} Mr. Cline's third assignment of error is without merit.
 {¶ 63} The Medical Diagnosis Exception
 {¶ 64} In his fourth assignment of error, Mr. Cline contends that the trial court erred by allowing into evidence testimony from a nurse who collected information for a rape kit on the minor victim, K.K. Mr. Cline contends this amounted to reversible error since its purpose was to gather evidence for the state and not to assist in the diagnosis and treatment of the minor victim, K.K. We find this contention to be without merit.
 {¶ 65} As we noted above, "[t]he determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion." Kidd at ¶ 59, citing Vinson at ¶ 49, citing Sledge
at ¶ 20, citing Rootes at 4-5, citing Black at 32. Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is *Page 18 
unreasonable, arbitrary, or unconscionable. Id., citingMontgomery at 413, quoting Adams at 157.
 {¶ 66} Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."
 {¶ 67} As to the admissibility of hearsay, Evid.R. 803(4) provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * * (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 68} "The application of this rule to investigations of alleged child abuse has been discussed by the Ohio Supreme Court in State v.Dever (1992), 64 Ohio St. 401." State v. Brazzon, 11th Dist. No. 2001-T-0050, 2003-Ohio-6088, ¶ 21. "The underlying rationale of the medical diagnosis exception is `the "selfish-interest rationale" or the belief that a person was motivated to tell the truth when seeking medical diagnosis or treatment because the person's well being might depend on expressing truthful information to the medical professional.'" Id., quoting In re Corry M. (1999), 134 Ohio App.3d 274, 281. (Citation omitted.) "In Dever, the Supreme Court relaxed the motivational requirement of the hearsay exception as applied to children. The court recognized that although `a young child would probably not personally seek [medical] treatment, but would generally be directed to treatment by an adult, * * * the child's *Page 19 
statements relating to medical diagnosis or treatment are [not] always untrustworthy for that reason alone.'" Id., citing Dever at 409-410. "While `the initial desire to seek treatment may be absent' in a child declarant, that `motivation certainly can arise once the child has taken to the doctor.'" Id., citing Dever at 410.
 {¶ 69} "Under Dever, the `cornerstone of admissibility under Evid.R. 803(4)' remains `whether the statements are reasonably pertinent to diagnosis or treatment.'" Id. at ¶ 22, citing State v. Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 Ohio App. LEXIS 583, 22 (citation omitted); cf. Dever at 414 ("statements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis or treatment, are admissible pursuant to Evid.R. 803(4)").
 {¶ 70} "In making this determination, a trial court must consider the circumstances surrounding the child's out-of-court diagnosis or treatment." Id., citing In re Corry M. at 282, citing Dever at 410. "If the trial court finds that the child's statements were made for the purpose of diagnosis or treatment, the evidence should be admitted." Id., citing Jeff at 35. "If, however, the trial court does not find sufficient factors indicating that the child's statements were made for the purpose of medical diagnosis or treatment, the statements must be excluded as not falling within the ambit of Evid.R. 803(4)." Id. (citation omitted).
 {¶ 71} Mr. Cline argues that the trial court impermissibly allowed into evidence a statement of medical history made by K.K. to Nurse Corturillo of Trumbull Memorial Hospital, which Nurse Corturillo obtained in order to complete a rape kit. Mr. Cline argues that a rape kit is a method of evidence collection for the state and not for the purpose of medical diagnosis and treatment. He further argues that Nurse Corturillo *Page 20 
was not making a medical diagnosis or giving treatment, but was rather only collecting evidence for the state and for the doctor to make a medical diagnosis.
 {¶ 72} Initially, we note that "[t]his court has held that for the medical diagnosis exception to apply it is not necessary that the statements be made directly to a physician." Brazzon at ¶ 20, citingState v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023, 1998 Ohio App. LEXIS 1451, at 36. "A statement may fit within the scope of the exception if it is directed to other physical and mental health professionals, nurses, psychiatrists, psychologists, therapists, as well as to social workers. Id., citing In re Cory M. at 281.
 {¶ 73} In the present case, Mr. Cline's counsel objected when the state questioned Nurse Corturillo as to what K.K. relayed to her concerning the incident for the medical history portion of the rape kit. A sidebar discussion was held, followed by an in-camera voir dire of Nurse Corturillo. Mr. Goodman argued that in collecting information for the purposes of a rape kit, she was not rendering medical treatment or making a diagnosis. The state, however, argued that the nurse was merely the fact-finder for the physician. Nurse Corturillo testified that it is general practice in the community for nurses to conduct rape kits, and that the purpose is to collect information for the doctor to make a medical diagnosis and provide treatment. Depending on what the patient reports, the examination is conducted differently. That is, it is important to find out what area of the patient was penetrated to determine what type of medical treatment needs to be given, thus, it is a pertinent part of the patient's medical history. The court overruled Mr. Goodman's objection, correctly reasoning that this type of *Page 21 
information was part of the treatment process, and to that extent, admissible under Evid.R. 803(4).
 {¶ 74} The state then examined Nurse Corturillo before the jury in the following colloquy:
 {¶ 75} "Mr. Burnett (for the state): It's my understanding that you routinely take a medical history to assist you in diagnosis or to assist a doctor in the diagnosis and treatment of a person's medical condition, is that correct?"
 {¶ 76} "Nurse Corturillo: Yes."
 {¶ 77} "Mr. Burnett: And in cases where there's a sexual assault that alleges penetration, it's important to know what is, what allegedly penetrated, and I am speaking specifically towards a vagina, is that correct?"
 {¶ 78} "Nurse Corturillo: Yes."
 {¶ 79} "* * *
 {¶ 80} "Mr. Burnett: In this case, you did take a history to assist the doctor, is that correct?"
 {¶ 81} "Nurse Corturillo: Yes."
 {¶ 82} "Mr. Burnett: And the chief complaint from the patient was that she was digitally penetrated, correct?"
 {¶ 83} "Nurse Corturillo: Yes."
 {¶ 84} Mr. Burnett then questioned Nurse Corturillo on the general process of conducting a rape collection kit, the types of samples that are typically collected from the victim, and whether it was customary procedure for the report to be turned into the police department. Mr. Goodman, Mr. Cline's counsel, elicited testimony from Nurse *Page 22 
Corturillo during cross-examination that a rape collection kit is also used for evidentiary purposes by the police.
 {¶ 85} As the record reveals, Nurse Corturillo testified to a minor portion of K.K.'s statement of medical history, that of the issue of penetration. The issue of penetration was clearly testified to as a requisite for proper medical diagnosis and treatment since it dictates to what extent and where the victim underwent trauma. Thus, the court appropriately narrowed the scope of the examination. The fact that a rape collection kit is both used for the diagnosis and medical treatment, as well as for police investigatory purposes was brought before the jury through the state's direct examination and Mr. Goodman's cross-examination. Thus, the testimony on the rape kit collection was limited in scope to only the information that pertained to medical diagnosis and treatment. The trial court did not abuse its discretion in admitting this limited testimony under the circumstances of this case.
 {¶ 86} Moreover, it is important to note that this is not a case where the victim declarant was unavailable for cross-examination. Rather, the victim, K.K. herself, testified to the incident, identified Mr. Cline, and further testified that she was digitally penetrated. In addition, DNA type that was consistent with K.K. was found on the knife that was recovered from Mr. Cline's vehicle when he was apprehended. There was no indication that K.K. was relaying the incident for anything but medical treatment. Although the trial court should have conducted a voir dire of the child, this court has held that "although a voir dire is desirable,Dever `does not actually mandate a voir dire.'" State v. Butcher,170 Ohio App.3d 52, ¶ 105 (Grendell, J., dissenting), citing State v.Cornwell (Feb. 27, 1998), 95-T-5379, 1998 Ohio App. LEXIS 806, 31. *Page 23 
"Moreover, courts have found that `failure to conduct such a voir dire * * * is not fatal to the admissibility of evidence under Evid. R. 803(4), if the medical professional and child are available for cross-examination.'" Id., citing State v. Sheppard, 164 Ohio App.3d 372,2005-Ohio-6065, ¶ 36; State v. Kelly (1994), 93 Ohio App.3d 257, 264;State v. Crum (Oct. 26, 1998), 9th Dist. No. 97-CA-0134, 1998 Ohio App. LEXIS 5678, 12; State v. Slane (Oct. 22, 1999), 6th Dist. No. F-98-020, 1999 Ohio App. LEXIS 4925, 44; State v. Demiduk (June 24, 1998), 7th Dist. No. 96-CO-16, 1998 Ohio App. LEXIS 3287, 14-16.
 {¶ 87} Even if we were to find the admission of this single hearsay statement error, the error would be harmless. "Any error in the admission of hearsay is generally harmless where the declarant of the hearsay statement is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature." In the Matter of:M.E.G., 10th Dist. Nos. 06AP-1257, 06AP-1258, 06AP-1263, 06AP-1264, 06AP-1265, 2007-Ohio-4308, ¶ 32, citing State v. Holloman, 2nd Dist. No. 06AP-01, 2007-Ohio-840, ¶ 32, citing State v. Turner, 2nd Dist. No. 04AP-364, 2004-Ohio-6609, citing State v. Tomlinson (1986),33 Ohio Ap.3d 278, 281. See, also, State v. Brazzon, 11th Dist. No. 2001-T-0050,2003-Ohio-6088; In re Corrigall (April 19, 2001), 8th Dist. No. 76921, 2001 Ohio App. LEXIS 1784.
 {¶ 88} Mr. Cline's fourth assignment of error is without merit.
 {¶ 89} Adjudication of Appellant as a Sexual Predator
 {¶ 90} In his fifth assignment of error, Mr. Cline contends that the trial court erred in adjudicating him a sexual predator. Specifically, Mr. Cline contends that this adjudication is against the manifest weight of the evidence since the Static-99 indicated *Page 24 
that he has a nineteen percent chance of reoffending. We find this contention to be without merit.
 {¶ 91} "We apply the civil manifest-weight-of-the-evidence standard of review in evaluating a trial court's sexual predator determination."State v. Jackson, Jr., 11th Dist. No. 2006-T-0123, 2007-Ohio-6932, ¶ 54, citing State v. Reeves, 11th Dist. No. 2006-T-0099, 2007-Ohio-4765, ¶ 13. "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." Id., citing Reeves at ¶ 13, citing State v. Wilson,113 Ohio St. 3d 382, 2007-Ohio-2202. "Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id., citing Reeves at ¶ 13, citingC.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 92} "Further, `[w]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct.'" Id. at ¶ 55, citing Reeves at ¶ 14, citing Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 79-81. "This presumption arises because the trial judge had an opportunity to view the witnesses and observe their demeanor in weighing the credibility of the witnesses." Id., citing Reeves at ¶ 14, citing Seasons Coal at 80.
 {¶ 93} "In contrast, the Supreme Court discussed the criminal manifest-weight-of-the-evidence standard of review in State v.Thompson (1997), 78 Ohio St.3d 380. The *Page 25 
Court in that case distinguished between the sufficiency of the evidence and the manifest weight of the evidence, holding that sufficiency of the evidence is a test of adequacy of the evidence as to whether the evidence is legally sufficient to support a verdict as a matter of law, while weight of the evidence addresses whether the state's or the defendant's evidence is more persuasive." Id. at ¶ 56, citingThompkins at 386-387.
 {¶ 94} "Under either the civil or criminal standard, the fact-finder is afforded great deference, but the civil standard tends to merge the concepts of weight and sufficiency. Thus, a judgment supported by some competent, credible evidence going to all the essential elements of the case must be affirmed." Id. at ¶ 57, citing Reeves at ¶ 16, citingWilson at ¶ 26.
 {¶ 95} "In contrast, under Thompkins, although there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a trial court's holding. Thus, the civil manifest weight of the evidence standard affords the lower court more deference than the criminal standard." Id. at ¶ 58, citingReeves at ¶ 17, citing Wilson at ¶ 26.
 {¶ 96} Mr. Cline contends that the trial court improperly adjudicated him as a sexual predator since he was found to have a nineteen percent risk of reoffending on the Static-99. This argument is wholly without merit since "* * * the Static-99 and other risk assessment tools are not dispositive. `It is within the discretion of the trial court to assess the significance of the psychological evaluation's findings, including its weight and credibility, and then consider the totality of the circumstances presented in this case.'" Jackson at ¶ 79, citing State v.Oliver, II, 11th Dist. No. 2006-T-0075, 2007-Ohio-339, ¶ 21, citingState v. Schaub, 11th Dist. No. 2003-L-091, 2005-Ohio-703, ¶ 35, *Page 26 
reversed on other grounds; In re Ohio Criminal Sentencing StatutesCases, 109 Ohio St.3d 313, 2006-Ohio-2109, ¶ 39. "Stated otherwise, `whether an offender is likely to re-offend sexually' is not bound by or couched in terms of recidivism test results and consideration of relevant circumstances and evidence on a case-by-case basis." Id., citing Oliver, II at ¶ 21, citing State v. Roberson, 147 Ohio App.3d 94,102.
 {¶ 97} "Indeed we have affirmed sexual predator adjudications for offenders who scored the lowest possible score and slightly above on the Static-99 in previous cases. In State v. Darroch, Jr., 11th Dist. No. 2005-L-02, 2006-Ohio-3211, we affirmed a sexual predator adjudication where the defendant scored the lowest possible score, a zero, on the Static-99. In State v. Richter, 11th Dist. No. 2002-L-080,2003-Ohio-6734, we affirmed a sexual predator adjudication where the defendant scored only a two." Id. at ¶ 80.
 {¶ 98} In this case, numerous findings support the trial court's sexual predator adjudication: there were four minor victims violated in three separate incidents; Mr. Cline admitted to at least part of the incidents; and admitted that he has a serious, ongoing problem where he fantasizes about young girls. Indeed, during one of the videotaped police interviews where he confesses, Mr. Cline admits that if he was not apprehended after the last incident, he is not sure he would have stopped at digital penetration.
 {¶ 99} A review of the record reveals that the trial court considered the evidence and relevant factors in former R.C. 2950.09 and its determination is amply supported by the evidence. Thus, we cannot say the trial court lost its way or created a manifest miscarriage of justice in making its determination and adjudicating Mr. Cline as a sexual *Page 27 
predator. Indeed, the weight of the evidence supports the trial court's determination that Mr. Cline is a sexual predator.
 {¶ 100} Mr. Cline's fifth assignment of error is without merit.
 {¶ 101} Manifest Weight of the Evidence
 {¶ 102} In his sixth assignment of error, Mr. Cline argues that his conviction is against the manifest weight of the evidence. Specifically, he argues that the testimony of the minor victims introduced during trial was inconsistent, and thus, the verdict is not supported by the evidence. We find this argument to be without merit.
 {¶ 103} "Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Jackson at ¶ 86, citing State v.McKinney, Jr., 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 46, citingState v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, ¶ 35, citingThompkins at 387.
 {¶ 104} "Further, `[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at ¶ 87, citingMcKinney at ¶ 47, citing State v. Fritts, 11th Dist. No. 2003-L-026,2004-Ohio-3690, ¶ 23, citing State v. Martin (1983), 20 Ohio App.3d 172,175. "This is so since `[t]he role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion.'" Id., citing McKinney at ¶ 47, citing Thompkins at 390 *Page 28 
(Cook, J., concurring). "The reviewing court must defer to the actual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses." Id., citing McKinney at ¶ 47, citing Thompkins at 390, citing State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 105} Mr. Cline contends that his convictions are against the manifest weight of the evidence since the testimony of the minor victims, especially that of J.B. and A.C., who were both raped in the same incident, are inconsistent. Mr. Cline also argues that the state failed to prove there was penetration on any of the counts.
 {¶ 106} We disagree with these contentions since a review of the record reveals the manifest weight of the evidence weighs heavily in a finding of guilt. All of the minor victims identified Mr. Cline, and further, Mr. Cline himself admitted to two of the three incidents. The only incident that he did not confess to, that of K.K., was linked to him through the DNA type that was found on Mr. Cline's knife, which was consistent with K.K.'s. There is more than enough evidence, including Mr. Cline's own videotaped confessions, linking him to these crimes.
 {¶ 107} As to the minor inconsistencies between the minor victims' testimony of identification and whether Mr. Cline did indeed digitally penetrate them, "[i]t is well-settled that when assessing the credibility of witnesses, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" Jackson at ¶ 93, citing McKinney at ¶ 49, citingState v. Grayson, 11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 31, citingState v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each *Page 29 
witness appearing before it." Id., citing McKinney at ¶ 49, citingWarren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, 8. Moreover, the purported inconsistencies involve minor details, but the descriptions given of Mr. Cline are overall strikingly similar. In addition, three of the minor victims identified Mr. Cline in photo arrays and in the courtroom.
 {¶ 108} Thus, the evidence in this case overwhelmingly supports a finding of guilt.
 {¶ 109} Mr. Cline's sixth assignment of error is without merit.
 {¶ 110} Alternate Juror's Observation of Appellant's Flight
 {¶ 111} In his sixth assignment of error, Mr. Cline contends that the trial court abused its discretion by failing to excuse an alternate juror who witnessed Mr. Cline's attempted escape during the jury trial. Mr. Cline contends that because the juror referred to Mr. Cline as "the prisoner" and since she witnessed him breaking free and fleeing from the courthouse, that she should have been dismissed as an alternate juror since there was a possibility she would "taint" the jury. We disagree with this contention.
 {¶ 112} "The Sixth Amendment to the United States Constitution mandates that `in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]' Beyond this, the United States Supreme Court interpreted the Due Process Clause of theFourteenth Amendment to the United States Constitution as requiring that a defendant accused of a state criminal violation be tried before a panel of fair and impartial jurors." State v. Jaryga, 11th Dist. No. 2003-L-023, 2005-Ohio-352, ¶ 72, citing Duncan v. Louisiana (1968),391 U.S. 145. See, also, Section 10, Article I, Ohio Constitution (establishing the right to `a speedy public trial by an impartial jury'). *Page 30 
 {¶ 113} "The verdict reached by a jury in a criminal trial must be based solely on the evidence and argument presented in open court." Id. at ¶ 73, citing State v. Taylor (1991), 73 Ohio App.3d 827, 831, citingPatterson v. Colorado (1907), 205 U.S. 454. "Outside influences must not be permitted to affect the jury's decision." Id.
 {¶ 114} Furthermore, "[t]he Supreme Court of Ohio has held that `a new trial may be granted for misconduct of the jury when the substantial rights of the defendant have been materially affected.'" Id. at ¶ 74, citing State v. Lewis (1993), 67 Ohio St.3d 200, 207; State v.Hipkins (1982), 69 Ohio St.2d 80, 83. See, also, Crim.R. 33; R.C.2945.79. "Jury misconduct will not warrant a new trial in the absence of prejudice to the defendant. `It is a long-standing rule * * * that we will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown.'" (Citations omitted.) Id., citing State v. Kehn (1977), 50 Ohio St.2d 11, 19.
 {¶ 115} "Therefore, the analysis of a claim of jury misconduct requires a two-step inquiry. First, there must have been misconduct by a juror. Second, the court must determine whether such misconduct materially affected the substantial rights of the defendant." Id. at ¶ 75, citingTaylor at 833. "This court has previously held that, `because the trial court is in the best position to determine the nature and extent of alleged jury misconduct, the trial court's decision on the scope of proceedings necessary to investigate the allegation is reviewed only for an abuse of discretion.'" Id., citing State v. Sweitzer (July 14, 2000), 11th Dist. No. 98-T-0203, 2000 Ohio App. LEXIS 3204, 12-13.
 {¶ 116} In this case, Mr. Cline alleges that because one of the two alternate jurors observed Mr. Cline fleeing from the courthouse jury trial on the second day, that her *Page 31 
observation had the possibility to "taint" the other jurors. We find no abuse of discretion in this case since there is no evidence of juror misconduct in this case.
 {¶ 117} Rather, the alternate juror took it upon herself to inform the court when she arrived the very next morning, prior to the resumption of the trial, that she had observed Mr. Cline running down the street after trial. The court then questioned her, as well as individually voir dired the remaining jurors for the possibility that they may also have witnessed Mr. Cline's flight, which they did not. The alternate juror testified that she would be able to remain impartial and that this did not prejudice her towards Mr. Cline in anyway. The court held Mr. Cline's objection to dismiss this alternate juror in abeyance to be ruled upon if the juror was needed. Ultimately, she was not needed and was dismissed.
 {¶ 118} As to Mr. Cline's baseless allegation that this alternate had the potential to taint the juror, there is no such evidence of misconduct and in any case, all the jurors were informed of Mr. Cline's attempted flight when the state presented evidence of such right after the jurors were individually voir dired. "Moreover, there is a presumption that the jury followed the court's jury instructions."State v. Green, 11th Dist. No. 2003-A-0111, 2005-Ohio-6715, ¶ 46, citingState v. Davie (Dec. 27, 1995), 11th Dist. No. 92-T-4693, 1995 Ohio App. LEXIS 6064, 28, citing State v. DePew (1988), 38 Ohio St.3d 275, 284.
 {¶ 119} We find no abuse of discretion since there is no evidence that the jury was prejudiced or tainted by this alternate juror's observation.
 {¶ 120} Mr. Cline's seventh assignment of error is without merit.
 {¶ 121} The judgment of the Trumbull County Court of Common Pleas is affirmed. *Page 32 
TIMOTHY P. CANNON, J., concurs,
 COLLEEN MARY O'TOOLE, J., concurs in judgment only. *Page 1